Opinion
 

 VARTABEDIAN, J.
 

 Val and Donna Pittman entered into a trust agreement in 1993. After their deaths, Donna’s children, Susan and Bradford Lee,
 
 *293
 
 filed a petition (Lee petition) regarding the trust. Val’s children, Janis and Mark Pittman, filed an application for a determination that the Lee petition constituted a contest, seeking enforcement of the no contest clause. The trial court found the Lee petition was a contest. The Lees appeal, raising numerous challenges to the trial court’s decision.
 

 Facts and Proceedings
 

 Val and Donna Pittman were married on March 6, 1981. Their marriage did not produce any children; however, Donna had two children from a prior marriage, Susan and Bradford Lee, and Val had three children, Janis, Mark and Barry Pittman.
 
 [1]
 

 Val and Donna (settlors) entered into the “Val Pittman and Donna Pittman 1993 Trust” on December 9, 1993. The trust estate was comprised of all the property listed and described on schedule A. The trust property from schedule A was divided into three schedules—schedules B, C and D. The settlors declared that all property listed on schedule B was their community property, all property on schedule C was Val’s separate property, and all property on schedule D was Donna’s separate property.
 

 Upon the death of a settlor (deceased spouse) the trust was to be divided into three separate trusts: the survivor’s trust, the exemption trust, and the marital trust. The survivor’s trust included all of the surviving spouse’s separate property and the surviving spouse’s interest in the settlor’s community property. The exemption trust consisted of the “maximum pecuniary amount that can be allocated to a trust that does not, to any extent, qualify for the federal estate tax marital deduction, without producing any . . . federal estate tax.” The marital trust consisted of the balance of the estate.
 

 Upon the death of the deceased spouse, the exemption trust and marital trust could not be amended, revoked or terminated. The surviving spouse was allowed to amend, revoke or terminate the survivor’s trust. The surviving spouse was entitled to the income from the marital trust. During the surviving spouse’s lifetime, the trustee could pay to the surviving spouse the income from the exemption trust and utilize assets from the marital and exemption trusts as necessary for the surviving spouse’s health, education, support and maintenance. The trust assets were to be distributed following the death of the surviving spouse.
 

 The trust was amended twice during the settlors’ lifetimes. Donna died on February 7, 1995 (the deceased spouse) and Val died on March 19, 1995 (the
 
 *294
 
 surviving spouse). Donna’s distribution consisted of the balance of the marital trust and exemption trust and provided for a $20,000 gift to her niece, Carrie Ann Lee.
 
 [2]
 
 The remainder of Donna’s trust was to be distributed 40 percent to Bradford Lee and 60 percent to Susan Lee.
 

 The survivor’s trust (Val’s) provided that $20,000 was to be distributed to his nephew, Ronald Koftinow. The remainder of the survivor’s trust was to be divided equally between Janis Pittman and Mark Pittman.
 

 The trust contained the following no contest clause: “Except as otherwise provided in this instrument, the settlors have intentionally and with full knowledge failed to provide for their heirs. Settlors have intentionally and with full knowledge failed to provide for Barry Valdean Pittman, the son of Val Pittman, or his issue. If any beneficiary under this trust, singularly or in conjunction with any other person or persons, contests in any court the validity of this trust or the settlors’ Last Will and Testament or seeks to obtain an adjudication in any proceeding in any court that this trust or any of its provisions or that such Will or any of its provisions is void or seeks otherwise to void, nullify, or set aside this trust or any of its provisions, then that person’s right to take any interest given to him or her by this trust shall be determined as it would have been determined as if the person had predeceased the execution of this Declaration of Trust without surviving issue. The provisions of this paragraph shall not apply to any disclaimer by any person of any benefit under this trust or under any Will.”
 

 On July 28, 1995, Susan and Bradford Lee (the Lees) filed a petition seeking their appointment as successor trustees, requesting an accounting, claiming that the designation of property in the Pittman trust as either separate or community property was done without Donna’s knowledge or Donna was not advised of the legal effect of such a designation, and asserting that some of the property listed on schedule C as Val’s separate property was either community property or quasi-community property. One of the Lees’ requests for relief was that “this Court order the modification of the exhibits to the trust agreement to reflect the correct property designations in accordance with proof.”
 

 The Lees filed a supplement to the petition on August 17, 1995. This supplement incorporated their original petition by reference and listed several trust assets they claimed were listed on schedule A (the trust estate), yet did not appear on schedules B, C or D; additionally they claimed that several bank accounts added to the trust were not listed on schedule A.
 

 On August 29, 1995, the case was continued pursuant to a written request of counsel. On September 11, 1995, Janis and Mark Pittman filed a response
 
 *295
 
 to the Lee petition. In addition to their response to the Lee petition, Janis and Mark Pittman filed an application for a determination that the Lee petition constituted a contest of the Pittman trust (the Pittman petition). Janis and Mark sought enforcement of the no contest clause contained in the Pittman trust.
 

 A continuance was granted the Lees on September 19, 1995. Counsel for the Lees informed the court that he would be filing a dismissal of the Lee petition. Later that day, the Lees filed a request for dismissal of their petition and its supplement.
 

 The Lees filed papers in opposition to the Pittman petition. The Lees claimed their petition did not seek to void or invalidate the Pittman trust but merely sought “clarification” of its provisions. Additionally, the Lees argued that if their petition constituted a contest it was a mere “paper contest.” The Lees stated that their supplement to their original petition was based on a copy of the trust document which had pages missing and their good faith allegations were in error.
 

 On October 18, 1995, a hearing was held on the Pittman petition. The trial court found that the Lees’ efforts to recharacterize assets in the trust by moving them to a different portion of the trust amounted to a contest. The trial court also found the Lees’ dismissal of their petition was too late and their actions constituted more than a mere paper contest. The application of the Pittmans was granted.
 

 The Lees filed a motion for relief pursuant to Code of Civil Procedure section 473, claiming mistake, inadvertence and/or excusable neglect. The Lees alleged their petition was mistakenly prepared using an incomplete copy of the Pittman trust and they inadvertently and/or with excusable neglect failed to adequately communicate to the court that their petition was not requesting recharacterization of the assets of the Pittman trust.
 

 The trial court denied their petition, finding that a reading of the petition and the supplement failed to support a finding that the supplement was a clarification of the original petition and merely sought to characterize assets not characterized in the trust.
 

 The Lees then filed a motion for reconsideration, claiming new case authority contradicted case authority relied on by the trial court. The motion for reconsideration was denied. This appeal followed.
 

 
 *296
 
 Discussion
 

 I
 

 Violation of No Contest Clause
 

 Subject to certain exceptions not relevant here, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause. (Prob. Code, § 21303.) A contest is “an attack in a proceeding on an instrument or on a provision in an instrument.” (Prob. Code, § 21300, subd. (a).)
 

 The standard of review this court must follow in determining if the no contest clause applies to the Pittman trust was set forth clearly by the California Supreme Court in
 
 Burch
 
 v.
 
 George
 
 (1994) 7 Cal.4th 246 [27 Cal.Rptr.2d 165, 866 P.2d 92].
 

 “The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein. [Citations.] . . .
 

 “An in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided therein. [Citation.] In essence, a no contest clause conditions a beneficiary’s right to take the share provided to that beneficiary under such an instrument upon the beneficiary’s agreement to acquiesce to the terms of the instrument. [Citation.]
 

 “No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to. the purposes expressed by the testator. [Citations.] Because a no contest clause results in a forfeiture, however, a court is required to strictly construe it and may not extend it beyond what was plainly the testator’s intent. [Citations.]
 

 “ ‘Whether there has been a “contest” within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.’ [Citations.] ‘[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.’ [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator’s intentions that control, and a court ‘must not rewrite the [testator’s] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator’s] unequivocally expressed intent from the reach of the no-contest clause.’ [Citation.]” (7 Cal.4th at pp. 254-255, fns. omitted.)
 

 
 *297
 
 The Lee petition contained the following relevant assertions:
 

 “10. When the trust agreement was entered into, certain exhibits were attached thereto wherein the settlors purportedly designated various items of real and personal property as community or separate property. Petitioners allege that said designation of property either took place without the knowledge of settlor and trustee Donna Pittman, or that Donna Pittman was not advised of the legal effect of such a designation of property.
 

 “11. Schedule C to the Val Pittman and Donna Pittman 1993 Trust designates certain real and personal property as the separate property of Val Pittman. Val Pittman and Donna Pittman were married for about 13 years, • and conducted numerous transactions regarding their separate and community property throughout their marriage. Thus, it is petitioners’ contention that some of the property listed in Schedule C is either community or quasi-community property.”
 

 The petitioners requested that the trial court “order the modification of the exhibits to the trust agreement to reflect the correct property designations in accordance with proof; ...”
 

 The Lees claim their petition was filed in order to clarify ambiguous provisions of the trust and to determine whether assets in the survivor’s trust were property characterized as Val’s separate property. They contend the trial court failed to apply the strict construction standard when it found the Lee petition violated the no contest clause.
 

 “In determining the intent of the transferor, a no contest clause shall be strictly construed.” (Prob. Code, § 21304.)
 

 The Lees cite
 
 Estate of Miller
 
 (1963) 212 Cal.App.2d 284 [27 Cal.Rptr. 909] to support their position. In
 
 Estate of Miller,
 
 the mother left her estate in three equal shares: Two shares were given outright to two of her daughters and the third share was to be held in trust for the benefit of the third daughter, Miriam. Upon Miriam’s death, the trust assets were to be given to specified beneficiaries. The will contained a no contest clause prohibiting a “ ‘contest in any court [of] the provisions of this instrument.’ ”
 
 (Id.
 
 at p. 287.) Miriam filed a complaint, claiming that her father entered into an agreement with her mother that they would leave their estate to each other and the surviving spouse would then leave the estate in three equal shares to the daughters. Miriam argued that diverting her share to a trust did not conform to the agreement and she should have received her share outright. In a separate probate proceeding, the probate estate was divided into three
 
 *298
 
 shares. The trial court ordered that two shares be distributed outright to the sisters, withholding distribution to the trust which was to benefit Miriam. The trial court did so to allow the filing of a claim that Miriam’s action would result in a forfeiture of her rights under the will. No one filed such a claim. The appellate court found that the trial court could not forbid distribution of the one-third portion of the estate on the possibility that a claim might be filed.
 

 In reaching its decision the court in
 
 Estate of Miller
 
 discussed the meaning of the term “contest.” It noted that “ ‘[c]ontest of a will’ is a term of art.” (212 Cal.App.2d at p. 296.) A contest traditionally involves issues such as the competency of the decedent, fraud, duress, menace or undue influence. (See current Prob. Code, § 6104.)
 

 The appellate court analyzed the clause in the Miller will. “The
 
 in terrorem
 
 clause provides the penalty of forfeitures as against anyone who ‘. . . shall contest in any court any of the provisions of this instrument. . . .’It will be noted that the clause appears to be narrower in scope than many similar provisions in other wills; the key word is
 
 contest,
 
 if the words employed by the testatrix refer only to a
 
 contest
 
 of the will, as distinguished from opposition to the effect of some provision of the will, it would be clear that the
 
 in terrorem
 
 clause could not be invoked against Miriam.” (212 Cal.App.2d at p. 296.)
 
 Estate of Miller
 
 does not aid the Lees’ position; it requires the court to interpret the scope of the instrument by looking at the words used in the instrument.
 

 The Lees claim their petition was merely trying to clarify ambiguities in the trust and determine if property designations in the trust were made in accordance with California community property law. They argue that only a broad construction of the terms “contest,” “void” and “invalidate” could result in a finding that their petition violated the forfeiture clause.
 

 Here, the no contest clause actually contains three provisions in the disjunctive: one prohibiting a “contest” to the validity of the trust; one prohibiting a person from seeking to obtain an adjudication that the trust or any of its provisions are void; and one prohibiting seeking “otherwise to void, nullify, or set aside this trust or any of its provisions.” By including the second and third prohibited methods of challenging the trust, the express language clearly seeks to prohibit more than just a contest in the sense used in
 
 Miller,
 
 i.e., a challenge to the validity of the will in its entirety. Quite apart from any of the words relied on by the Lees (contest, void, or invalidate), the clause in the Pittman trust stretches beyond these words and prohibits anyone from
 
 seeking
 
 to merely
 
 set aside any
 
 of the
 
 provisions
 
 of the trust. (See 212 Cal.App.2d at p. 296.)
 

 
 *299
 
 Next, the Lees claim that the thwarting of the settlors’ intent is not an appropriate test for determining whether a no contest clause has been violated. The trial court stated that “The requested modification would have thwarted the expressed intent of the settlors by changing the characterization and dispositive scheme of the Pittman trust as set forth in numerous provisions of the trust.”
 
 [3]
 

 The Lees rely on
 
 Jacobs-Zorne
 
 v.
 
 Superior Court
 
 (1996) 46 Cal.App.4th 1064 [54 Cal.Rptr.2d 385] (hereafter
 
 Jacobs-Zorne)
 
 to support their position that the settlors’ general intent is not the appropriate test. The
 
 Jacobs-Zorne
 
 court engaged in a lengthy discussion of how a no contest clause should be construed, and concluded: “[B]efore 1990 California courts approached the concept of ‘strict construction’ in different ways. Some courts interpreted this to mean narrow construction, focusing on the plain meaning of the will itself as well as the words used in the no contest clause to determine what actions the testator was trying to prohibit and whether the beneficiary’s actions were prohibited. Other courts claimed to apply strict construction but, in fact, broadly interpreted the no contest clause and used extrinsic evidence to determine whether the action thwarted the decedent’s intent in some way or whether there was a purpose to defeat some provision of the will. In both cases, courts agree the testator’s intent is paramount, but differ in how they decide what the testator’s intent actually was.
 

 “In 1990, the California Legislature responded to the conflict in the case law by choosing the line of cases favoring a true, narrow, strict construction.” (46 Cal.App.4th at pp. 1082-1083.)
 

 Initially we note that, although the
 
 Jacobs-Zorne
 
 court stated that the thwarting of the testator’s intent is not the appropriate test (46 Cal.App.4th at p. 1075), we fail to see how the thwarting of the testator’s intent differs from the
 
 Jacobs-Zorne
 
 test of determining “what actions the testator was trying to prohibit”
 
 (id.
 
 at p. 1082). Furthermore, for reasons we shall discuss, we cannot follow the finding in
 
 Jacobs-Zorne
 
 that the thwarting of the testator’s intent is not the appropriate test in determining if a no contest clause has been triggered.
 

 The Lees rely primarily on Jacobs-Zorne's criticism of
 
 Estate of Kazian
 
 (1976) 59 Cal.App.3d 797 [130 Cal.Rptr. 908], The discussion in the
 
 Jacobs-Zorne
 
 opinion relied on by the Lees is particularly troubling. The
 
 Jacobs-Zorne
 
 court criticized the case of
 
 Estate of Kazian,
 
 citing and quoting from
 
 Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th 246. This discussion is found on
 
 *300
 
 pages 1076-1077 of the
 
 Jacobs-Zorne
 
 opinion. First the
 
 Jacobs-Zorne
 
 court discussed
 
 Estate of Razian
 
 as follows: “Finally, in
 
 Estate of Razian, supra,
 
 59 Cal.App.3d 797, Mr. Kazian filed a complaint to establish community property alleging
 
 that all of the
 
 property in his wife’s estate, including property held in her sole name, was community property. The trial court found no community property interest. Upon the executor’s petition, the probate court found the complaint violated the no contest clause because it attempted to thwart the decedent’s wishes as expressed in her will.
 
 (Id,
 
 at p. 802.) To reach this conclusion, the court recited the rule of strict construction, but then stated that ‘whether there was a contest “must be gleaned from a consideration of the purpose[s] that the [testator] sought to attain by the provisions of [his or her] will.” ’
 
 (Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th 246, 281, quoting
 
 Estate of Kazian, supra,
 
 59 Cal.App.3d 797, 802.)”
 
 (JacobsZorne, supra,
 
 46 Cal.App.4th at pp. 1076-1077.) The
 
 Jacobs-Zorne
 
 court then rejects the
 
 Kazian
 
 holding, quoting from
 
 Burch
 
 v.
 
 George.
 
 “This ‘purposes’ approach ‘was flatly rejected [in favor of the rule of strict construction] by the Legislature when it adopted Probate Code section 21304.’ (7 Cal.4th at p. 282.)”
 
 (Jacobs-Zorne, supra,
 
 46 Cal.App.4th at p. 1077.)
 

 Although the above quote is from the dissenting opinion of
 
 Burch
 
 v.
 
 George
 
 (7 Cal.4th at p. 282), the
 
 Jacobs-Zorne
 
 court fails to set forth this important context, nor does it explicate that the Supreme Court’s majority opinion in
 
 Burch
 
 v.
 
 George,
 
 7 Cal.4th at page 255, quoted
 
 Estate of Kazian
 
 with approval in a manner directly contrary to the dissenting opinion quoted as part of the opinion of
 
 Jacobs-Zorne.
 
 The majority in
 
 Burch
 
 v.
 
 George
 
 set forth the principles it would use in making its determination whether a contest occurred. This discussion in
 
 Burch
 
 v.
 
 George
 
 included the following: “ ‘[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.’
 
 (Estate of Kazian, supra,
 
 59 Cal.App.3d at p. 802.) Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator’s intentions that control, and a court ‘must not rewrite the [testator’s] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator’s] unequivocally expressed intent from the reach of the no-contest clause.’
 
 (Ibid)” (Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th at p. 255.)
 

 The
 
 Burch
 
 v.
 
 George
 
 court clearly set forth and utilized these principles in reaching its decision. (7 Cal.4th at p. 255.) We are bound by the majority opinion of
 
 Burch
 
 v.
 
 George
 
 and not by the dissent, as quoted in
 
 Jacobs-Zorne. (Auto Equity Sales, Inc.
 
 v.
 
 Superior Court
 
 (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) The settlors’ intentions control and these
 
 *301
 
 intentions must be gleaned by considering the purposes the settlors sought to attain by the provisions of the trust. As previously set forth, the no contest clause in the Pittman trust was extremely broad. It is clear the Pittmans’ purpose was to expansively prohibit any attempt to set aside any provision of the trust.
 

 Next, the Lees contend the term “contest” does not mean any legal proceeding which may have the effect of disturbing the distribution to designated beneficiaries. They claim their petition was, at most, asserting their mother’s community property interest in some of the property. Again the Lees rely heavily on the
 
 Jacobs-Zorne
 
 opinion and the
 
 Jacobs-Zorne
 
 court’s interpretation of
 
 Burch
 
 v.
 
 George
 
 and
 
 Estate of Kazian.
 

 The trial court here found
 
 Burch
 
 v.
 
 George
 
 and
 
 Estate of Kazian
 
 stand for the proposition that “an attempt to use legal proceedings to recharacterize property expressly designated as separate property by the settlors constitutes a contest.” By contrast, the
 
 Jacobs-Zorne
 
 court concluded: “Normally, a beneficiary’s attempt to have property characterized in a particular way (i.e., as joint tenancy property, domestic partnership property, community property, or the like) is not considered an attack on the will or on provisions within the will.” (46 Cal.App.4th at p. 1083.) A discussion of the facts of
 
 Burch
 
 v.
 
 George, Estate of Kazian,
 
 and
 
 Jacobs-Zorne
 
 is necessary to understand the
 
 Jacobs-Zorne
 
 court’s conclusion and to demonstrate why the Lees’ attempt to recharacterize property was a violation of the no contest clause here.
 

 In
 
 Estate of Kazian, supra,
 
 59 Cal.App.3d 797, the wife, Angelen, left a will declaring that all property in her name was her sole and separate property, having been owned by her prior to her marriage or acquired after marriage with proceeds of her separate property. She left her second husband, Onig, $60,000 from her estate, which was valued at $1.3 million. She inserted a no contest clause prohibiting a contest to the will or any of its parts or provisions. Onig filed an action alleging that all property in the estate was community property. The superior court found that Onig’s action was a contest of decedent’s will declaring all her property was separate property.
 

 The appellate court agreed. “[T]here can be no doubt that the action filed by Kazian was a proceeding intended to thwart the decedent’s wishes as expressed in her will to which the no contest clause contained in that will properly applied.” (59 Cal.App.3d at p. 802, fn. omitted.) The appellate court found that the decedent intended to leave Onig a small percentage of her estate and lavish her bounty on her children and grandchildren from her first marriage.
 

 
 *302
 
 “The object of Kazian’s action was totally contrary to this intent. He sought a judgment, the effect of which would have been to chop the estate in half. He was, of course, entitled to bring his separate action, but ‘ “when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions, the courts, rightly hold that no legatee, without compliance with that condition, shall receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes.” ’ [Citations.]” (59 Cal.App.3d at p. 803.)
 

 The appellate court also rejected Onig’s argument that he only sought a construction of the will. “To claim—as he does—that his action sought nothing but a ‘construction’ of the will is disingenuous. The testatrix’ declaration that all of her property was her ‘sole and separate property’ needed no construction.” (59 Cal.App.3d at p. 804.)
 

 In
 
 Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th 246, Marlene became Frank Burch’s fifth wife. He
 
 executed
 
 a will and inter vivos trust as his integrated estate plan. He inserted a no contest clause. The trust agreement stated that all property in the trust was Frank’s separate property. Marlene was provided for generously in the trust. “After Frank’s death, Marlene petitioned the probate court to determine whether she may, without violating the no contest clause, proceed with plans to litigate her rights as a surviving spouse to certain assets in the trust estate under California’s community property laws and under the federal Employee Retirement Income Security Act of 1974 . . . .”
 
 (Id.
 
 at p. 251; Prob. Code, § 21320, subd. (a).)
 

 The Supreme Court found that it was clear Frank intended his property to be transferred subject to the distribution .scheme in the trust. It was also clear “from the trust terms that the trustor intended to dispose of the trust estate in whole, and that he intended to put his surviving spouse to an election between taking the distribution provided for her under the trust, or alternatively, renouncing that distribution and taking against the trust estate pursuant to her independent legal rights. This intention appears from the declaration in the recitals that the property subject to the trust is and is to remain the trustor’s ‘separate property.’ ”
 
 (Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th at p. 257.)
 

 The Supreme Court quoted Witkin with approval: “ ‘[I]f the testator refers to the property bequeathed or devised in general terms without identifying it as separate or community, it may be inferred that he intended only to dispose of his own interest (his separate property and one-half the community property), and no election is necessary, no matter how liberal the provision is for the wife. [Citations.]’ (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 55, pp. 93-94.) On the other hand, ‘if the testator
 
 *303
 
 declares that all the property is his separate property, thus clearly indicating a belief that he is disposing of the entire estate, election is required. [Citations.] “It is of no concern that he was mistaken in his belief that the wife had no community interest in the property devised. His manifest intention to devise the estate as an entirety, and irrespective of any right which might be asserted on behalf of the marital community, is the controlling factor.” [Citation.]’ (12 Witkin,
 
 supra,
 
 § 55, p. 94.)”
 
 (Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th at p. 257.)
 

 In
 
 Jacobs-Zorne, supra,
 
 46 Cal.App.3d 1064, Harry Swonetz left a will disposing of his separate property and his one-half interest in his community property. Harry referred to his property in general terms and
 
 did not
 
 designate any or all of his property as separate and/or community property. He left a portion of his estate to his wife, Helen. During his marriage, Harry transferred several bank accounts and a Treasury bill, held initially as his separate property, to himself and Helen in joint tenancy. Harry died and Helen filed a petition seeking to determine ownership of the bank accounts and the Treasury bills, and sought to have the accounts determined to be in joint tenancy rather than probate property. The appellate court found that Helen’s action was not a contest because she did not challenge the will or any of its provisions but asserted a claim based on a right independent of the will.
 

 The Lees contend they are similar to the petitioners in
 
 Jacobs-Zorne
 
 because they were not seeking to invalidate the trust or its provisions but were at most asserting their mother’s community property interest in some of the property which had been transferred to the survivor’s trust.
 

 The Lees’ situation is more akin to that of the parties in
 
 Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th 246, and
 
 Estate of Kazian, supra,
 
 59 Cal.App.3d 797. Val and Donna Pittman meticulously set forth pieces of property to be included in the trust estate and characterized each piece of property as community property, separate property of Val, or separate property of Donna. It is clear from the terms of the trust that Val and Donna intended their property to be distributed according to their precise identification of the property as community or separate property and according to their distribution scheme; they did not set forth their property in general terms. The Lee petition sought to disrupt this meticulously drawn distribution scheme. The Lees were not seeking to characterize uncharacterized property, as was the
 
 Jacobs-Zorne
 
 petitioner, but were seeking to thwart the trustors’ clear intent by recharacterizing property expressly placed in the trust and specifically characterized. While we agree that normally a beneficiary’s attempt to have property characterized in a particular way is not an attack on the will or provisions
 
 *304
 
 within the will, this rule does not apply when the instrument already sets forth how property is to be characterized. Here the Lees were not merely seeking to characterize uncharacterized property belonging to Donna; they were seeking to upset the very characterization that Donna agreed to.
 

 In a further objection to the trial court’s ruling, the Lees claim that whether a challenge will result in the distribution of a larger share to the complaining party is not relevant to whether a claim is a contest, nor is cost an appropriate consideration “without more.” The trial court found that the Lee petition sought to recharacterize assets in a manner more favorable to them, and, in its tentative ruling, it commented on the added expense to adjudicate their petition.
 
 [4]
 

 The no contest clause here allowed one to disclaim any benefits under the trust without violating its provisions. This evinces an intent that, other than by a voluntary relinquishment of a benefit, Val and Donna did not want a beneficiary’s entitlement diminished by the acts of another beneficiary. While recharacterization of property ending in a more favorable result to the petitioning party does not by itself indicate a contest, logic dictates that the result of recharacterization can be relevant to the question whether the purposes sought to be obtained by the settlor will be thwarted by a successful challenge.
 

 Regarding the consideration of litigation expenses, the parties do not dispute that “the prospect of litigation and consequent expense to the estate does not in itself bring an action within the scope of a forfeiture clause.”
 
 (Poag
 
 v.
 
 Winston
 
 (1987) 195 Cal.App.3d 1161, 1181 [241 Cal.Rptr. 330].) Although the trial court commented on the added expense incurred as a result of the Lee petition, in rendering our independent decision as a matter of law, we find no need to rely on this consideration as the reason for the result reached.
 

 In conclusion, the Pittman trust contained an extremely broad no contest clause prohibiting not only a “contest” of the trust as that term of art is traditionally utilized, but also prohibiting one from seeking to obtain an adjudication that a provision is void and additionally prohibiting anyone from seeking “otherwise” to void, nullify, or set aside the trust or any of its provisions.
 

 Provisions of the trust declare that all property listed on the particular schedules is of a particular type; each item of property is meticulously listed
 
 *305
 
 and characterized. By challenging the characterization of the property on the schedules, the Lees have contested the provisions of the trust declaring the nature of the property in each schedule. The trust as a whole evinces a clear and decided intent on the part of Donna and Val Pittman that each piece of property in the trust estate pass in precisely the manner established in the trust. Consequently, the Lees’ petition violated the purpose of the no contest provision in the Pittman trust.
 

 We note that Probate Code section 21320 provides in pertinent part:
 

 “(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether a particular motion, petition, or other act by the beneficiary, including, but not limited to, creditor claims under Part 4 (commencing with Section 9000) of Division 7 and Part 8 (commencing with Section 19000) of Division 9, would be a contest within the terms of the no contest clause.
 

 “(b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a) and does not require a determination of the merits of the motion, petition, or other act by the beneficiary.” Had the Lees availed themselves of this statutorily authorized procedure, any forfeiture which results here was avoidable.
 

 II.
 

 Forced Election
 

 Relying again on the
 
 Jacobs-Zorne
 
 opinion, the Lees claim that a beneficiary’s attempt to have property characterized in a particular way is not a contest unless it is clear the trustor intended to force the beneficiary to an election between a trust distribution and his or her rights independent of the trust. They argue they had no rights independent of the trust and therefore could not have been put to a forced election. The Lees contend the result should be the same as if they were standing in Donna’s shoes, an argument earlier raised in a different context and rejected by us.
 

 A forced election occurs when it is clear from the trust terms that the trustor intended to dispose of particular property and put the beneficiary to an election between taking the distribution provided for under the trust or renouncing the trust distribution and taking against the trust estate pursuant to independent rights.
 
 (Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th at p. 257.)
 

 The concept of a forced election was explained in
 
 Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th at pages 265-266: “The reasoning underlying the validity and
 
 *306
 
 enforceability of a forced election is persuasive in putting into proper perspective the claim that the use of a no contest clause represents an attempt by a trustor or testator to dispose of another’s property. ‘While it is the law that a testator can only dispose of his own property, he may assume to dispose of that which belongs to another, and such disposition may be ratified and confirmed by its owner, by the acceptance, under the will, of a donation, necessarily implying such ratification and confirmation. The act of the testator attempting to dispose of the property of another, and the act of the owner of such property in accepting the benefit provided for him by the testator, united, complete the disposition, which, without the act of confirmation, would be of no effect.’ [Citation.] In other words, ‘the effectiveness of a testamentary disposition of the surviving spouse’s community property interest to third persons depends upon the survivor’s voluntary and affirmative acceptance of the will’s provisions and cannot stem from the decedent’s testamentary act alone. [Citation.]’ [Citation.] This logic applies with equal force to dispel any notion that a no contest clause allows or encourages a testator or trustor to ‘unlawfully’ dispose of another’s property.”
 

 In
 
 Jacobs-Zorne,
 
 Helen was seeking rights to property not specifically included in the trust but independent of the trust. A forced election was therefore not required.
 
 Jacobs-Zorne
 
 does not stand for the proposition that a forced election is a prerequisite to the enforcement of a no contest clause in all situations. In
 
 Burch
 
 v.
 
 George, supra,
 
 7 Cal.4th 246, Marlene was seeking to recharacterize assets specifically included in the trust as Frank’s separate property. She had to elect to either take under the trust or assert her community property rights independent of the trust.
 
 Burch
 
 v.
 
 George
 
 does not stand for the proposition that a forced election is a prerequisite to the enforceability of a no contest clause in all situations. The presence of a forced election in
 
 Burch
 
 v.
 
 George
 
 was used as evidence that the trustor intended that all property in the trust be subject to the distribution scheme of the trust.
 

 The purpose of a no contest clause, to discourage litigation and give effect to the purposes expressed by the trustor, is equally viable when a trustor or testator disposes only of property belonging to him or her, giving property to one who has no independent legal right to the property. As stated in
 
 Burch
 
 v.
 
 George,
 
 the purpose and effect of a no contest clause is to act “as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.” (7 Cal.4th at p. 265.)
 

 Discussions in
 
 Burch
 
 v.
 
 George
 
 and
 
 Jacobs-Zorne
 
 regarding a forced election simply have no application to the contest presented here. A forced
 
 *307
 
 election is not a requirement before a no contest clause may be enforced; it is merely one form of evidence used to demonstrate the intent of the settlor. Although the Lees had no right independent of the trust agreement and therefore did not come within the ambit of a forced election, their petition clearly sought to change a provision of the trust agreement. This negates the purpose of the no contest clause—to discourage litigation and give effect to the purposes expressed by the settlors. The Lee petition fell clearly within the boundaries of the no contest clause.
 

 The Lees argue they should not be treated differently than if Donna had contested the characterization of Val’s separate property. We need not determine how Donna would have fared if she had challenged the characterization of the property; the Lees are treated differently for the simple reason that they are different from Donna. They have cited no authority which would allow them to switch legal positions with someone they are not.
 

 III-V
 
 *
 

 Disposition
 

 The judgment is affirmed. Costs on appeal are awarded to respondents.
 

 Stone (W. A.), Acting P. J., and Buckley, J., concurred.
 

 Appellants’ petition for review by the Supreme Court was denied July 22, 1998.
 

 [1]
 

 Val’s son Barry is not a beneficiary of the trust and is not a party to this appeal.
 

 [2]
 

 Carrie Ann Lee is not a party to this action.
 

 [3]
 

 Preliminarily, we note that the trial court’s specific reasoning has no bearing on our independent review of this question of law.
 

 [4]
 

 Again, we are not bound by the reasoning found in the decision of the trial court; our interpretation of the trust document is a question of law.
 

 *
 

 See footnote,
 
 ante,
 
 page 290.