[No. B186768. Second Dist., Div. Four. June 13, 2007.]

AVA ASTAIRE MCKENZIE, Plaintiff and Appellant, v.
VIVIEN VANDERPOEL et al., Defendants and Respondents.

## COUNSEL

Price, Postel & Parma and Timothy E. Metzinger for Plaintiff and Appellant.

Epstein, Turner & Song, David B. Epstein and Adam C. Scardina for Defendants and Respondents Vivien Vanderpoel, Paul L. Potter and Phyllis M. Potter.

Arthur W. Carlson for Defendants and Respondents Fred Astaire, Jr., Fred Henry Astaire, Johanna Astaire and John Astaire.

## OPINION

**EPSTEIN, P. J.**—The issue in this appeal is whether a trust beneficiary may avoid a no contest clause in a trust instrument by utilizing a statutory procedure under California probate law to reallocate trust principal and income. We conclude that the statutory procedure does not insulate the beneficiary from the impact of the no contest clause, which is broad enough to encompass the relief she ultimately seeks. We affirm the order of the trial court denying plaintiff's application for an order determining that her proposed action would not violate the clause.

## FACTUAL AND PROCEDURAL SUMMARY

In 1959, Maud L. Bull created an irrevocable inter vivos trust with 2,000 shares of International Business Machines Corporation stock. There are three tiers of beneficiaries, each with a distinct interest. The first tier beneficiaries (seven individuals) are to receive fixed monthly payments ranging from $200 to $500 for life. The rest of the net trust income is to be accumulated by the trustee and added to the principal.

Upon the death of the last of the first tier beneficiaries, the remaining trust estate is to be divided into three equal shares (each share to be held, administered, and distributed by the trustee as a separate trust). The second tier beneficiaries are the children of Phyllis Astaire (Bull's niece), who died before the trust was created. These second tier beneficiaries are E. N. Potter, Jr., Fred Astaire, Jr., and Phyllis Ava Astaire (now known as Ava Astaire McKenzie, plaintiff herein). The net income from these three trusts is to be distributed to the second tier beneficiaries for life. Upon the death of a second tier beneficiary, that beneficiary's share is to be distributed to lawful living issue. According to the parties, E. N. Potter, Jr., and Fred Astaire, Jr., had children, but plaintiff did not. The trust expressly excludes legally adopted children from the term "issue" as used in the trust instrument.

If a second tier beneficiary dies without leaving living issue, "such share shall be divided into equal parts, one for each then living child and one for the then living lawful issue of each deceased child of Phyllis Astaire. Each part set aside for a living child shall augment the share then held for the benefit of or previously distributed to such child. Each part set aside for the issue of a deceased child shall be distributed to such issue on the principle of representation." The impact of these provisions is that upon her death, plaintiff's trust share will be distributed equally to her brothers, the other second tier beneficiaries, or will pass to their respective children.

The third tier beneficiaries are the three children of E. N. Potter—Vivien Vanderpoel, Paul L. Potter, and Phyllis M. Potter (collectively the Potter third tier beneficiaries), and the three children of Fred Astaire, Jr.—Fred Henry Astaire, Johanna Astaire, and John Astaire (collectively, with Fred Astaire, Jr., the Astaire, Jr., beneficiaries).

The trust instrument includes a no contest clause. No principal or income may be paid to a trust beneficiary who "has, *directly or indirectly*, alone or in cooperation or conjunction with others, *contested or sought to impair, object*

*to or invalidate this Declaration of Trust* or any instrument whatsoever by which MAUD L. BULL hereafter shall seek to add or cause to be added, assets to these trusts under her reserved right herein. Any person engaging in such conduct shall be deemed a Contestant for the purposes of this subparagraph. . . . To the extent necessary to carry out the intent as expressed in this paragraph (6), any such contest or course of conduct shall be deemed a condition which shall disentitle such Contestant to further right to any income or principal under this Declaration of Trust; however, such forfeiture shall not prejudice any right which any issue of the Contestant might otherwise have hereunder, nor shall the forfeiture terminate or restrict the distribution of income or principal to any beneficiary who shall not be a Contestant, or who has not cooperated with a Contestant. The Trustee's determination that any person is or is not a Contestant shall be binding for all purposes hereunder." (Italics added.)

Union Bank of California has served as the trustee since creation of the trust and is given broad powers, including the discretion to determine what is principal or income of the trust estate. The trust is to be governed by California law and provides: "Except insofar as the Trustee shall exercise the discretion herein conferred, matters relating to principal and income shall be governed by the provisions of the Principal and Income Law from time to time existing."

As of 1987, only one first tier beneficiary was alive: Helen Richardson, then 87 years old. At the time, the trust estate was worth over $20 million and generated an annual income over $920,000. The only distribution from the trust was the fixed $500 monthly payment to Richardson. All remaining income was added to principal. The second tier beneficiaries sought to modify the trust to begin receiving trust income in excess of Mrs. Richardson's share. This effort failed because the beneficiaries could not obtain a favorable ruling from the Internal Revenue Service (IRS) concerning generation-skipping transfer tax.

By 1992, the trust estate had grown to over $22 million and was generating more than $1.2 million income annually. The second tier beneficiaries obtained the favorable IRS ruling that year. Together with all the third tier beneficiaries, they reached a settlement and brought a petition to modify the trust. In May 1992, the probate court issued an order approving the settlement. The trustee was instructed to purchase an annuity to secure the monthly payments to first tier beneficiary Richardson. Under the terms of the order, the second tier beneficiaries are to receive equal shares of the net income

from the trust. Third tier beneficiaries are to receive $10,000 annual payments for the remainder of Mrs. Richardson's life, plus $72,000 to be set aside in a further trust for the benefit of the issue of the third tier beneficiaries. No one raised an issue that this petition violated the no contest clause.

Pursuant to the 1992 order, the trust estate was divided into three equal shares held for the benefit of the second tier beneficiaries. By the end of 2004, plaintiff had a separate trust interest worth over $11 million. Together with the equal shares of the other second tier beneficiaries, the total value of the original trust exceeded $33 million.

In early 2004, an attorney for plaintiff contacted the trustee and requested an adjustment between the principal and income of plaintiff's share of the trust for that year. This was to be accomplished by transferring a portion of the principal of that share into income, thus increasing the annual distribution to plaintiff. The trustee wrote to plaintiff and all known beneficiaries advising them that he proposed to transfer $130,210.64 from principal cash to income cash in plaintiff's trust. The letter explained the procedure for filing an objection to this proposal.

A number of beneficiaries objected to the proposal, and as a result, the trustee decided not to implement the proposed adjustment. Plaintiff filed an application under Probate Code section 21320[1] to obtain a judicial determination as to whether a petition to modify her share of the trust by adjusting principal and income would violate the no contest clause. She attached a copy of her petition for instructions to direct the adjustment of principal and income. (To avoid confusion, we refer to the application under section 21320 as the "safe harbor application" and to the petition for instructions as the "adjustment petition.") In the adjustment petition, plaintiff relied upon the California Uniform Principal and Income Act (CUPIA), section 16320 et seq., and section 17200.

Plaintiff explained why she wanted an adjustment of income and principal: "The Trustee has concluded that as a result of having invested the trust assets in accordance with a total return objective and the prudent investor rule, Ava's Trust is generating insufficient accounting income to provide the

---

[1] All statutory references are to the Probate Code.

Section 21320 has been characterized as a safe harbor for beneficiaries who seek a preliminary determination as to whether a petition would constitute a contest in violation of a no contest clause. (See *Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1207–1208 [52 Cal.Rptr.3d 473]; *Estate of Davies* (2005) 127 Cal.App.4th 1164, 1173 [26 Cal.Rptr.3d 239].)

income beneficiary, the Petitioner herein, with that degree of beneficial enjoyment that she would ordinarily expect to receive as the sole income beneficiary of a separate trust for her benefit." She provided a chart demonstrating that the annual income distributed to her had dropped from $341,343.16 to $264,920.08 over the previous four-year period.

Plaintiff asked the court to make not only the single adjustment initially proposed by the trustee in 2004, but also to make additional adjustments between principal and income on an annual basis, sufficient to give her a guaranteed minimum yield of 4 percent of her trust share. At the end of each calendar year, the trustee would determine the amount of gross income generated by plaintiff's trust for the year. "If the accounting gross income generated by [plaintiff's] Trust for such year is less than four percent (4%) of the market value of the principal assets of the [plaintiff's] Trust at the close of business on the last day of such year, as determined by the Trustee in the Trustee's discretion, the Trustee shall adjust the principal and income accounts of [plaintiff's] Trust by allocating to income for such year from principal an amount equal to the resulting shortfall." Plaintiff wanted this adjustment to continue "from year to year unless and until modified by the Trustee" or further order of the court.

Plaintiff argued that the adjustment petition would not trigger the no contest clause because she "does not seek to impair, object to or invalidate any provisions contained in the Trust." She claimed, instead, that she only sought to enforce her statutory right under section 16503, subdivision (d) to petition the court. She argued that her request involved only the fiduciary power of the trustee. She speculated that the settlor "could not possibly have specifically intended the no contest clause (which was prepared in 1959) to prevent [her] from exercising a statutory right that became available to her by legislation in the year 2000."

The Potter third tier beneficiaries and the Astaire, Jr., beneficiaries opposed plaintiff's safe harbor application on the ground that the adjustment petition would impair the trust provisions directing that plaintiff only receive net income and that the principal be preserved for the third tier beneficiaries. They argued this would constitute a contest under the no contest clause. They also argued the invasion of principal to provide the guaranteed higher yield sought by plaintiff would further frustrate the settlor's intent by reducing the principal available to meet plaintiff's guaranteed income.

Plaintiff replied to the oppositions and argued the adjustment petition would not violate the no contest clause because (1) she is merely complying with the statutory procedure provided in CUPIA; (2) seeking an adjustment between principal and income is not an action identified as a violation of the

no contest clause under section 21300; and (3) the no contest clause is to be strictly construed, and as so interpreted, the adjustment petition is not a contest.

The Potter third tier beneficiaries submitted a declaration by Michael Cutshall, a vice-president of Union Bank of California and administrator of the trust. He explained: "Currently, the Trustee takes no position regarding whether an adjustment to the allocation of principal and income of the Ava Astaire McKenzie share should or should not be implemented. Further, the Trustee does not intend to either support or oppose the application by Ms. McKenzie for an order determining that her proposed petition seeking to implement an adjustment does not constitute a contest within the terms of the no contest clause of the Trust, and the Trustee does not intend to support or oppose Ms. McKenzie's proposed petition if it is filed."

After taking the matter under submission, the probate court issued the following ruling: "Court determines that filing of the Proposed Petition will be a 'contest' within the meaning of the 'no Contest' clause of the Trust. Court finds that Proposed Petition would change the characterization of property i.e. from principal to [interest] thereby changing the intent of the settlor. Estate of Pittman [(1998)] 63 CA4th 290 [73 Cal.Rptr.2d 622]." The court denied all requests for attorney fees. This appeal followed. The Astaire, Jr., beneficiaries join in the brief filed by the Potter third tier beneficiaries.

## DISCUSSION

Plaintiff argues her adjustment petition "would not violate the no contest clause in the Trust instrument because: (1) the Trust Instrument expressly permits the Trustee to make the proposed adjustment under CUPIA; (2) the Proposed Petition complies with the statutory procedures set forth in CUPIA; and (3) seeking an adjustment between principal and income is not an 'action identified in the no contest clause as a violation of the clause' under . . . section 21300."

■ Section 21320 provides in pertinent part: "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary, . . . would be a contest within the terms of the no contest clause." It "provides 'a safe harbor for beneficiaries who seek a judicial determination whether a proposed legal challenge would be a contest, and that is the only issue to be decided when such an application is made. [Citation.] As a general rule, the decision about whether the beneficiary's proposed action would be a will contest may not involve a

determination of the merits of the action itself. . . . ' " (*Hearst v. Ganzi, supra,* 145 Cal.App.4th 1195, 1207–1208 (*Hearst*), quoting *Estate of Davies, supra,* 127 Cal.App.4th at p. 1173.) Our standard of review is de novo because the petition presents a legal question with respect to the applicability of the no contest clause. (*Hearst, supra,* 145 Cal.App.4th at p. 1209.)

■ Section 21300, subdivision (a) defines " 'Contest' " as "any action identified in a 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests." The issue here is whether plaintiff's proposal to adjust income and principal would constitute an indirect contest, which is defined as "a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms based on any other ground not contained in subdivision (b) [direct contests], and that does not contain any of those grounds." (§ 21300, subd. (c).)

■ The principles governing interpretation and enforcement of no contest clauses are well established: " 'On the one hand, they are favored since they discourage litigation and give effect to the testator's intent. [Citations.] On the other hand, no-contest clauses are disfavored because they work a forfeiture. [Citation.] Resolution of these competing policies requires no-contest clauses be strictly construed and not extended beyond "what was plainly the testator's intent." [Citation.] However, a court may not rewrite a will so as to exempt contests or legal proceedings from the scope of the no-contest clause which would frustrate the testator's purpose as expressed in his or her will. [Citation.] [¶] Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used. [Citation.]' " (*Hearst, supra,* 145 Cal.App.4th at p. 1207, quoting *Estate of Watson* (1986) 177 Cal.App.3d 569, 572 [223 Cal.Rptr. 14].)

Here the no contest clause applies to any beneficiary who "contested or sought to impair, object to or invalidate this Declaration of Trust . . . ." As we have discussed, the trust creates three tiers of beneficiaries. The fixed monthly income to be paid to the first tier beneficiaries was guaranteed by a provision allowing the trustee to invade the trust principal for that purpose. Unlike the first tier, the second tier beneficiaries, including plaintiff, were to receive net income rather than a fixed amount or percentage. The trustee was not given a similar power to invade the principal to ensure any particular income flow to the second tier beneficiaries. Principal was to be preserved for the third tier residuary beneficiaries.

The intent of the settlor is plain: First tier beneficiaries were guaranteed a fixed income; second tier beneficiaries were to receive whatever net income was generated; and the principal was to be reserved for the third tier beneficiaries. We turn to plaintiff's arguments.

The principal thrust of plaintiff's argument is that she is merely invoking the statutory CUPIA procedure for requesting a reallocation of trust principal and income and therefore has not violated the no contest clause. She points out that the trust expressly provides that "matters relating to principal and income shall be governed by the provisions of the Principal and Income Law from time to time existing." At oral argument, counsel for plaintiff acknowledged that if her adjustment petition violates the trustor's intent, then it also would violate the no contest clause. But she contends that by incorporating CUPIA, the trustor intended to allow the change sought by plaintiff.

The current principal and income law of California is CUPIA, section 16230 et seq. Section 16336, part of CUPIA, allows a trustee to adjust principal and income if certain conditions are met.[2] Plaintiff invokes section 16503, subdivision (c), part of CUPIA, which applies where a trustee has proposed an adjustment to principal and income and received objections: "(c) If the trustee receives a written objection within the applicable period, either the trustee or a beneficiary may petition the court to have the proposed action taken as proposed, taken with modifications, or denied. In the proceeding, a beneficiary objecting to the proposed action has the burden of proving that the trustee's proposed action should not be taken. . . ."

Respondents argue that because the trustee decided not to seek an adjustment after receiving objections from some beneficiaries, subdivision (d) rather than subdivision (c) of section 16503 applies. Subdivision (d) provides: "If the trustee decides not to implement the proposed action, the trustee shall notify the beneficiaries of the decision not to take the action and the reasons for the decision, and the trustee's decision not to implement the proposed action does not itself give rise to liability to any current or future beneficiary. *A beneficiary may petition the court to have the action taken, and has the burden of proving that it should be taken.*" (Italics added.) We need not and do not determine which subdivision applies, for two reasons. First, this issue relates to the merits of the adjustment petition, which we may not consider in reviewing the probate court's ruling on the safe harbor application. (*Hearst, supra*, 145 Cal.App.4th 1195, 1207–1208.) Second, resolution of this issue is not necessary to the question presented here. For the same reasons, we do not decide whether the adjustment petition complies with the requirements of CUPIA.

■ Plaintiff cites no authority to support the proposition that the availability of the CUPIA procedure insulates her adjustment petition from the impact of the no contest clause. We have found none. The trust provision

---

[2] Section 16336, subdivision (a) provides: "Subject to subdivision (b) [limiting adjustments], a trustee may make an adjustment between principal and income to the extent the trustee considers necessary if [specified conditions] are satisfied . . . ."

incorporating the current principal and income law is separate from the no contest clause. There is nothing in the CUPIA provisions cited by plaintiff that indicates a legislative intent to exempt these procedures from the scope of a no contest clause.[3] Section 16336, which allows a trustee to adjust principal and income, is drawn in large part from section 104 of the Uniform Principal and Income Act (1997). (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (2007 supp.) foll. § 16336, p. 54.) The Law Revision Commission Comments to section 16336 include background from the uniform act: "Section 104 [Prob. Code, § 16336] does not empower a trustee to increase or decrease the degree of beneficial enjoyment to which a beneficiary is entitled under the terms of the trust; rather, it authorizes the trustee to make adjustments between principal and income that may be necessary if the income component of a portfolio's total return is too small or too large because of investment decisions made by the trustee under the prudent investor rule." (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code, *supra*, foll. § 16336, at p. 55.)

Section 21303 provides: "Except to the extent otherwise provided in this part, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause." We conclude that the mere availability of the CUPIA procedure does not exempt plaintiff's adjustment petition from the no contest clause. The trustor set out specific provisions tailoring the beneficial interests of each tier of beneficiaries. The general provision providing that the trust should be governed by the principal and income law does not override the express intent of the trustor that the second tier beneficiaries receive net income only.

We next consider whether the adjustment petition is within the scope of the no contest clause. As we have discussed, the no contest clause here applies to any beneficiary who "contested or sought to impair, object to or invalidate this Declaration of Trust . . . ." "[E]ven though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch v. George* (1994) 7 Cal.4th 246, 255 [27 Cal.Rptr.2d 165, 866 P.2d 92].)

Here, plaintiff seeks annual income equal to a minimum of 4 percent of her trust share, rather than the one-third share of net trust income provided in the original trust instrument. She would have the trustee reallocate funds from

---

[3] Section 21305, enacted in 2000 and amended in 2002, lists pleadings under various statutory procedures that do not violate a no contest clause. (Stats. 2000, ch. 17, § 5; Stats. 2002, ch. 150, § 2.) But these provisions do not apply to trusts that became irrevocable before January 1, 2001 or January 1, 2003. (§ 21305, subds. (d), (e); *Hermanson v. Hermanson* (2003) 108 Cal.App.4th 441 [133 Cal.Rptr.2d 486].)

principal, which is to be reserved to third tier beneficiaries by the terms of the trust, in order to guarantee this increased income. This proposal is a major change which would impair the terms of the original trust because it would provide more income to plaintiff than allowed by the trust in years when net trust income falls below 4 percent of her trust interest. Further, the principal of the trust, which is to be reserved to the third tier beneficiaries, could be invaded, thus reducing the third tier share in contravention of the terms of the trust. As we have discussed, the trust gave the trustee the power to invade the principal in order to make the payments to the *first tier* beneficiaries but did not provide the same authority in the case of the second tier beneficiaries. The intent of the trustor is clear: The second tier beneficiaries were to receive only the net income from the trust. The adjustment petition would significantly alter those terms.

In an attempt to distinguish *Estate of Pittman, supra,* 63 Cal.App.4th 290, on which the probate court relied, plaintiff argues that the no contest clause here is narrowly drawn. In *Pittman,* a husband and wife created an inter vivos trust which provided that upon the death of a settlor, the trust was to be divided into three separate trusts: the survivor's trust (survivor's community property share and separate property); the exemption trust (the maximum amount allowed under the federal estate tax marital deduction); and the marital trust (balance of estate). The surviving spouse was entitled to the income from the marital trust. The trustee could pay the surviving spouse the income from the exemption trust and utilize assets as necessary from the marital and exemption trusts to support the surviving spouse. (*Id.* at p. 293.) When the surviving spouse died, the trust assets were to be distributed.

The no contest clause stated that the settlors had intentionally failed to provide for their heirs, specifically the son of the husband. " 'If any beneficiary under this trust, . . . contests in any court the validity of this trust or the settlors' Last Will and Testament *or seeks to obtain an adjudication in any proceeding in any court that this trust or any of its provisions . . . is void or seeks otherwise to void, nullify, or set aside this trust or any of its provisions,* then that person's right to take any interest given to him or her by this trust [shall be as if the person had predeceased the execution of the trust without surviving issue].' " (*Estate of Pittman, supra,* 63 Cal.App.4th at p. 294, italics added.)

The wife's children from a former marriage requested an accounting, challenging the designation of property as either community or separate. The trial court found that the effort to recharacterize assets in the trust amounted to a contest. (*Estate of Pittman, supra,* 63 Cal.App.4th at p. 295.) The

*Pittman* court found that by including language prohibiting an adjudication that the trust or any of its provisions is void, or seeking to otherwise void, nullify, or set aside any of its provisions, the express language clearly seeks to prohibit more than just "a challenge to the validity of the will in its entirety." (*Id.* at p. 298.) It concluded: "[T]he clause in the Pittman trust . . . prohibits anyone from *seeking* to merely *set aside any* of the *provisions* of the trust." (*Ibid.*)

■ Here, the no contest clause applies to any attempt to "impair" the trust. We conclude that by using the term "impair" the settlor intended the no contest clause to apply to circumstances broader than an attempt to invalidate the entire trust. Under section 21300, subdivision (c), an indirect contest includes a challenge to one or more terms of an instrument. Our conclusion is consistent with the opinion in *Estate of Friedman* (1979) 100 Cal.App.3d 810 [161 Cal.Rptr. 311].

In *Estate of Friedman*, the court found a no contest clause similar to that here was violated. "Appellant's proposed complaint, if filed, would result in the thwarting of [settlor's] wishes as expressed in her will. [Settlor] bequeathed appellant $50,000 and designated her as the life income beneficiary of the family trust; she named Friedman [settlor's husband] as the remainder beneficiary of the marital trust, and gave him therein a power of appointment over the trust estate. Appellant's proposed complaint is designed to frustrate this testamentary plan by securing for her a sum equivalent to the value of [settlor's] estate allegedly appropriated by Friedman, by making him the constructive trustee of the estate for appellant's benefit, and by restraining him from exercising the power of appointment given him by [settlor] in the marital trust. The no-contest clause herein states that a beneficiary may not, without forfeiting the interest given him under the will, '*contest this Will or attack or seek to impair or invalidate any of its provisions.*' The filing of appellant's proposed complaint would come squarely within such conduct, and thus would constitute a violation of the no-contest clause." (*Estate of Friedman, supra,* 100 Cal.App.3d at p. 818, italics added.)

■ In summary, we conclude that the availability of a statutory procedure under CUPIA to reallocate principal and income does not exempt the adjustment petition from the scope of the trust's no contest clause. We also conclude that the adjustment petition would impair the trust by guaranteeing plaintiff a minimum income and by allowing the trustee to reallocate assets from principal which is to be reserved to the third tier beneficiaries. By impairing the trust in this way, the adjustment petition falls within the broad scope of the no contest clause.

## DISPOSITION

The order of the probate court is affirmed.

Willhite, J., and Manella, J., concurred.