7 Cal.App.3d 471 (1970)
86 Cal. Rptr. 491
Estate of CARL F. KRUSE, Deceased.
IRENE E. KRUSE, Individually and as Executrix, etc., Petitioner and Appellant,
v.
SHRINERS' HOSPITAL FOR CRIPPLED CHILDREN, Objector and Appellant.
Docket No. 1194.
Court of Appeals of California, Fifth District.
May 8, 1970.
*474 COUNSEL
Taylor & Taylor and Edward T. Taylor for Petitioner and Appellant.
Bush, Ackley, Milich & Hallinan and Hartley H. Bush for Objector and Appellant.
OPINION
STONE, P.J.
Carl F. Kruse died January 15, 1955, leaving a will which named his wife, Irene I. Kruse, executrix, and bequeathed all of the income from a testamentary trust to her for life, commencing with the date of his death, with power to invade the corpus. The residue remaining upon her death was devised and bequeathed to Shriners' Hospital for Crippled Children, hereinafter referred to as "Shriners."
Shriners complain that the executrix made no accounting for income received during the administration, and that the court denied its request that she be surcharged with family allowance paid out of the corpus.
The will provides that all income from assets be distributed to the decedent's wife from the date of his death and during probate administration, directing his executrix to "make the same provisions for the beneficiary as provided in said trust." Thus the court found that Mrs. Kruse, as executrix, acted properly in paying the income to herself, as income beneficiary, and in excluding such items of income from her accounting.
Shriners' principal complaint, however, relates to the family allowance, or those portions thereof paid from corpus. The executrix obtained an order of court for a family allowance of $750 per month prior to return of the inventory and appraisement, and thereafter no change was made in the allowance. Shriners argues that the executrix, by paying herself all income from the date of death and, in addition, $750 per month family allowance, depleted the corpus of the estate and materially reduced the residue to be distributed to Shriners upon her death.
(1) A gift of income from date of death is deemed a bequest under the will (Estate of Roberts, 27 Cal.2d 70 [162 P.2d 461]; Estate of Platt, 21 Cal.2d 343 [131 P.2d 825]) and since it began as of the date of death it was permissible for the executrix to pay all income to herself during probate. (Estate of Lair, 38 Cal. App.2d 737 [102 P.2d 436].) (2) The family allowance was not ordered to be paid by crediting it first to income and then, if necessary, by paying the balance from corpus. Therefore the probate judge *475 properly refused Shriners' request to surcharge the executrix that portion of the family allowance paid from corpus.
(3) The argument that the court, in ordering the family allowance, failed to take into account the provisions of the will providing for payment of income, comes too late. (4) The same is true of the contention that the estate was kept in probate for an unduly long time. Precisely these arguments were made in Estate of Roberts, supra, 27 Cal.2d 70, 76, and the Supreme Court said: "Appellants contend that the widow has no right to the family allowance of $100 monthly granted her by an order of the probate court on the grounds that the bequest of $200 monthly from the date of death of the testator was in lieu of a family allowance, and that in any event, she was not entitled to a family allowance for a period longer than three years within which the estate would have been closed but for her allegedly improper conduct in delaying the administration of the estate. The merits of these contentions cannot be determined in the present proceeding, for the order of the probate court granting the family allowance was neither appealed from nor modified. The order was made before the inventory was filed and was therefore subject not only to appeal (Prob. Code, § 1240), but to modification by the court after the inventory was filed. (Prob. Code, § 681.) Having failed to take an appeal within the time prescribed or to petition for the modification of the order after the filing of the inventory, appellants cannot attack the order collaterally in the present proceeding."
Petitioner, as executrix and as an individual, presents two points on appeal, first, that Shriners forfeited its right to become a beneficiary under the will by violating the in terrorem clause of the will and, second, that the court erred in holding that real property acquired by the decedent and his wife as joint tenants after execution of the will, was community property and subject to probate as part of the estate.
The in terrorem clause of the will provides that if "any devisee or legatee or beneficiaries under this Will ... shall either directly or indirectly seek to establish or assert any claims to my estate or any part thereof, or interest therein, excepting under this Will, or attack, oppose, or seek to set aside the probate of this Will, or to impair, invalidate, or set aside its provisions, or any of them, or to have the same, or any part thereof, or any devise, legacy, or bequest, or trust funds or estate herein, limited, declared void or diminished, or to defeat or change any of the testamentary plan of this Will, or shall endeavor to secure or take any part of my estate in any manner other than through or under this Will, ... I hereby give, devise and bequeath to such person or persons the sum of One ($1.00) Dollar and no more in lieu of any other share or interest in my estate, ..."
The executrix argues that Shriners claimed "a definite dollar and/or *476 specific vested interest in the estate," which constituted an attempt to change the will and thwart the purpose of the testator, so that Shriners is entitled to $1 and no more.
It seems to us that Shriners had a perfectly legitimate interest in seeking an accounting and a clarification of the items of the account. As a matter of fact, some items not involved in this appeal were found to have been improperly claimed as credits by the executrix, and were surcharged against her. Moreover, her delay in filing a final account and bringing the probate to a close justified Shriners' intervention. After the first request by Shriners in 1960 for an accounting, the executrix delayed until forced by Shriners to make an accounting and close the estate in 1966. (5) As a "person interested in the estate," Shriners is authorized by statute to file written exceptions to an account, to contest the same, and to appeal from an order settling the account. (Prob. Code, § 927; Estate of Meyer, 241 Cal. App.2d 747, 750 [51 Cal. Rptr. 72].) It would be anomalous, at least, to hold that Shriners must suffer a penalty for exercising a valid and legal right to demand an accounting and to object to an incorrect accounting. This court held, in Estate of Miller, 230 Cal. App.2d 888, 902 [41 Cal. Rptr. 410], that: "It is always proper for a beneficiary of an estate who believes that the executor is not fulfilling his duty to make the objections which the code permits without risk of suffering a penalty provided by an in terrorem clause."
The executrix argues that Shriners, by objecting to the accounting, attempted to seek a construction of the provisions in the will contrary to the intent of the decedent. This, it is contended, is a violation of the in terrorem clause. (6) But seeking an interpretation of a will does not in and of itself constitute an attempt to thwart the will of a testator. In Miller, page 903, we said: "Furthermore, it is the privilege and right of a party beneficiary to an estate at all times to seek a construction of the provisions of the will. An action brought to construe a will is not a contest within the meaning of the usual forfeiture clause, because it is obvious that the moving party does not by such means seek to set aside or annul the will, but rather to ascertain the true meaning of the testatrix and to enforce what she desired."
(7) The right of a widow to a family allowance is wholly statutory, and the status of an order granting such allowance is not dependent upon authorization in the will. Section 680 of the Probate Code provides that the widow is "entitled" to such reasonable allowance as may be necessary, and "Such allowance must be paid in preference to all other charges, except funeral charges, expenses of last illness and expenses of administration...." (8) Since the will contains no reference to payment of family allowance, it cannot be said that Shriners, in asking for an interpretation and clarification *477 of the family allowance in relation to the will, with the possibility of surcharging the executrix if payments were improper, attempted to change the will.
Finally, the executrix contends the trial court erred in holding that real property in Santa Cruz County, taken in her name and that of the deceased as joint tenants, was intended by them to be community property. (9) The law is clear that a husband and wife can, by agreement, convert joint tenancy property to community property, and in accordance therewith the will recites: "THIRD: I hereby declare that my wife and I have agreed to and we have transmuted any and all separate property and any and all interest therein to community property, and we have agreed to and have transmuted into community property all property heretofore held in joint tenancy and all such joint tenancy holdings have been by agreement terminated."
As the trial judge noted, this provision relates only to property owned by Kruse and his wife at the time the will was executed. It does not evidence an intent that any after-acquired property was, by the agreement mentioned in the will, to be community property. The Santa Cruz property was purchased by the testator 15 months after the will was executed and, in the absence of direct evidence as to the husband's state of mind, we look to the surrounding circumstances. The husband recited in his will that he understood the distinction between community property and joint tenancy property, and 15 months later he took title to the Santa Cruz property in the names of his wife and himself as joint tenants. We find nothing in the record to indicate that he ever intended to change the title. The wife testified that she never knew her husband was going to purchase the property, let alone how he intended to take title, until he told her he had bought the Santa Cruz property. There is no testimony that either the husband or the wife agreed to transmute the property to community. (10) Conversion of joint tenancy to community property requires an agreement or an understanding between the joint tenants; it cannot be accomplished unilaterally. (Machado v. Machado, 58 Cal.2d 501, 506 [25 Cal. Rptr. 87, 375 P.2d 55]; Knego v. Grover, 208 Cal. App.2d 134 [25 Cal. Rptr. 158].) After her husband's death, the executrix petitioned to terminate the joint tenancy, filed an inheritance tax affidavit, had a decree establishing the fact of death entered, and thereafter sold the property and retained the proceeds of the sale as her own as surviving joint tenant.
Although it has been held that a proceeding to establish the fact of death does not establish title (Estate of Basso, 68 Cal. App.2d 294 [156 P.2d 476]; Goldberg v. Goldberg, 217 Cal. App.2d 623, 628 [32 Cal. Rptr. 93]), the acts of the executrix in following the usual proceeding to terminate the joint tenancy, and filing inheritance tax information on that basis, corroborate her testimony that she believed the property was held in joint tenancy, and *478 negate an inference that she and her deceased husband had agreed that it was community property. The court drew a contrary inference from the fact the estate tax return listed the property as community. Of course, the widow's acts after death cannot change title, but the court saw in the estate tax return a reflection of an understanding before death that the property was community. On this point, however, the widow testified: "Well, I did exactly what Vern Withuhn [her accountant] told me. I took my papers all my papers to him and that was the way I left it. He said what I did was right."
Mr. Withuhn, a certified public accountant, testified that he included the joint tenancy property as part of the estate because "Item 5, Schedule "A" was taken by joint tenancy deed but was acquired with community property funds so is included at Schedule "A" instead of here." He further explained that he listed the property as community in order to take advantage of the splitting in half provisions in the tax law, and also for the purpose of obtaining a "stepped up" basis in the event of a sale. He said as it turned out no tax advantage accrued because the actual cost basis was higher than the appraised value. But this is not evidence of the intent of either the husband or the wife; it is the accountant's own conclusion.
(11) The presumption that the listing in the inheritance tax form implies the intention of the holders of the joint tenancy deed was that the property be community is overcome by the evidence as to its sale, and testimony of the accountant that indicated an over-zealous desire to secure a tax advantage. (See Estate of Neilson, 57 Cal.2d 733, 745 [22 Cal. Rptr. 1, 371 P.2d 745].)
We find no substantial evidence in support of the trial court's order that the joint tenancy property was transmuted to community property, and that it should be accounted for as part of the corpus of the estate.
That part of the order requiring the executrix to account for any of the proceeds from the sale of the joint tenancy property is reversed. In all other respects the orders and decree appealed from are affirmed.
Gargano, J., and Coakley, J., concurred.
A petition for a rehearing was denied June 4, 1970, and the application of petitioner and appellant for a hearing by the Supreme Court was denied July 1, 1970.