[No. B153652. Second Dist., Div. Eight. Apr. 11, 2003.]

Estate of ESTELLE H. STRADER, Deceased.
JANE GRANT, as Co-Administrator, etc., et al., Petitioners and Appellants, v.
JAMES HIXON, Objector and Appellant.

## COUNSEL

Sacks, Glazier, Franklin & Lodise, Robert N. Sacks and Matthew W. McMurtrey for Petitioners and Appellants.

Copenbarger & Associates, Paul D. Copenbarger and Jacqueline D. DeWarr for Objector and Appellant.

## OPINION

**BOLAND, J.—**

### SUMMARY

A distribution request in the final account of a probate estate, seeking distribution of certain litigation proceeds to the beneficiaries who funded the litigation rather than to all the residuary beneficiaries of the estate, was not an attempt to frustrate the testator's intent and did not violate the no contest clause of the testator's will.

FACTUAL AND PROCEDURAL BACKGROUND

Estelle H. Strader died testate on September 14, 1994. Her will, executed in 1987, leaves the residue of her estate to five persons: her nieces Valerie McCuen, Susan Mary Crickenberger and Jane Grant, who each received a two-ninths share; her husband's niece Sue Ward, who also received a two-ninths share; and James Hixon, the son of her husband's deceased nephew, who received a one-ninth share. The dispute before this court pits Hixon against the other residuary beneficiaries, and involves the results of litigation relating to an earlier conservatorship of Strader's estate. We recite first the facts relating to the conservatorship litigation, and then turn to the actions taken in this probate proceeding.

### 1. *The conservatorship litigation.*

Strader's mental state deteriorated some years before her death, and in 1988 Farmers and Merchants Trust Company (Farmers) became the conservator of her estate. Strader's nieces eventually came to believe that Farmers mishandled Strader's conservatorship estate in numerous ways. After Strader died, Grant and Ward were appointed special co-administrators of her probate estate. Shortly thereafter, on May 15, 1995, Grant and Ward as co-administrators filed objections to Farmers' final account as conservator of Strader's conservatorship estate. Those objections and the ensuing litigation resulted, five years later, in a court-approved settlement agreement between Farmers and the objectors (McCuen, Crickenberger, Grant and Ward, the last two both individually and as co-administrators of the probate estate).

Under the settlement of the conservatorship litigation, Farmers paid the objectors a total of $1,235,000.[1] Certain of the objectors had advanced their own funds for attorney fees, costs and other litigation expenses, and the settlement agreement provided for reimbursement from the $1,235,000 payment of "all of such monies or advances" to those who advanced them. The agreement stated that (a) a memorandum of costs filed with the court reflected the bulk of the attorney fees, costs and expenses—$599,165—as of the date of that memorandum, (b) the objectors had incurred "other fees, costs and related expenses (of approximately $60,000) since the date of that Memorandum or not included in it," and (c) "[a]fter all of these fees, costs and expenses are reimbursed and any outstanding fees and costs are paid, the remaining proceeds from the settlement payment will become a part of the Probate Estate." The court approved the settlement on May 15, 2000.

---

[1] This court grants Hixon's request for judicial notice of (a) the May 15, 2000 order approving the settlement agreement in the conservatorship litigation, and (b) the January 6, 2000 report and recommendations of the referee in the conservatorship litigation, together with the January 27, 2000 court order adopting that report.

2. *Probate proceedings during the conservatorship litigation.*

Unlike the other four residuary beneficiaries under Strader's will, James Hixon did not wish to risk the depletion of his share of the estate in the litigation with Farmers, and refused to participate. He objected to the appointment of Grant and Ward as co-administrators, and objected to their August 1996 request for payment of attorney fees from the estate for the Farmers litigation. According to Hixon's attorney, Hixon withdrew his objections after it was agreed that Hixon's share of the estate would not be charged with the fees incurred if the litigation were unsuccessful. On September 25, 1996, according to stipulation, the court approved the first account of the co-administrators, ordered preliminary distributions, and authorized payment of $78,865.11 in attorney fees related to the Farmers litigation to be charged against the shares of the four nieces. The order stated there would be "no reduction of James Hixon's share of the Estate for the [Farmers]-related fees, and James Hixon's distribution ordered below is increased by his one-ninth share . . . of the [Farmers]-related fees . . . ."[2] The estate then remained open for four more years, until the Farmers litigation was concluded by the settlement described above.

3. *Probate proceedings after the conservatorship litigation.*

On October 19, 2000, the co-administrators filed their third and final account, report and request for final distribution (final account). The final account describes the preliminary distributions, and requests the final distribution of two separately described amounts, as follows:

(1) $280,301.90, less approved fees, to be distributed according to Strader's will to the residuary beneficiaries, one-ninth to Hixon and two-ninths each to Ward, Grant, Crickenberger and McCuen.

(2) $455,840.32, "the net amount received as a result of the Conservatorship action as authorized in the May 15, 2000 order" to be distributed "to those who participated in and supported the Farmers . . . action . . . ." Ward and McCuen assigned their shares to Grant and Crickenberger, so that the final account requested distribution of 50 percent each to Grant and Crickenberger.[3]

On November 28, 2000, Hixon filed objections to the final account. Hixon asserted (a) he was entitled to a one-ninth share of the total residuary estate,

---

[2]Hixon received cash and personal property valued at $107,869.75 in this preliminary distribution, and each of the four nieces received $197,522.23. The record also shows an earlier preliminary distribution ordered on October 16, 1995, on Hixon's petition, of $181,525.50 to each of the nieces and $90,762.75 to Hixon.

[3]Explaining this request, the final account stated: "An additional amount was received from Farmers and Merchants Trust Co. as a result of the efforts of Co-Administrators, Jane R.

including the assets received in the conservatorship litigation; (b) the co-administrators failed to account for the proceeds of the conservatorship litigation, specifically $179,994.68 ($1,235,000 paid by Farmers, less expenses of $599,165 identified in the memorandum of costs referred to in the settlement agreement, less $455,840.32 available for distribution under the final account); (c) the powers of the co-administrators should be immediately suspended; and (d) Grant and Ward violated the in terrorem clause of the will and accordingly should receive nothing from the estate, and should be ordered to return preliminary distributions previously received.

On January 29, 2001, the court continued the hearing on the final account to March 5, 2001, and ordered the co-administrators to issue a supplemental accounting through December 31, 2000. The supplemental accounting was to include a schedule describing "the deductions made from the gross settlement against Farmers & Merchants Trust to arrive at the net sum distributed to the estate, and the explanation of how the expenditures were approved by the court." A supplemental accounting was filed on March 1, 2001.

Meanwhile, on February 26, 2001, the co-administrators demurred to certain of Hixon's objections, contending that the claimed violation of the no contest clause of the will, and the challenge to the reimbursement of expenses in the conservatorship litigation, were insufficient to state a cause of action. At the March 5 hearing, the court denied Hixon's petition to suspend the powers of the co-administrators, and granted the co-administrators' motion for a protective order regarding discovery served by Hixon, subject to reconsideration at a hearing scheduled for April 2, 2001. All other matters were continued to April 2, 2001.

At the April 2 hearing, the court ordered distribution to Hixon of a one-ninth share of the $455,840.32 net proceeds of the conservatorship litigation, and otherwise approved the final account. The court stated that "[a]s far as the demurrer is concerned, the court finds that the demurrer

---

Grant and Sue H. Ward and the individual objectors in the action against Farmers and Merchants Trust Co. in the conservatorship. James Hixon objected to this action being taken. James Hixon objected to Jane R. Grant and Sue H. Ward being appointed as Co-Administrators because he did not want to see the matter pursued. James Hixon refused to participate in the action or pay for any attorney fees concerning the action. All attorney fees and costs were paid for by Jane R. Grant, Sue H. Ward, Mary Sue Crickenberger, and Valerie D. McCuen and amounted to over $696,660. Sue H. Ward and Valerie D. McCuen have assigned their shares to Jane R. Grant and Mary Sue Crickenberger. A great deal of time, expense and effort was expended on this case. The case extended over a 6 year period, involved protracted and contentious discovery, lengthy settlement efforts, other proceedings, and involved a lengthy trial. The court found entirely against F & M and awarded substantial damages and attorney fees. . . ."

should be sustained without leave to amend," and found no violation of the no contest clause. Judgment was entered on July 23, 2001.[4] Notice of entry was served on July 30, 2001. On August 9, 2001, Hixon moved for reconsideration of the court's rulings on the final account, his objections and the demurrer. At a hearing on September 24, 2001, the trial court denied Hixon's motion on the ground it lacked jurisdiction to entertain it.

Hixon filed a notice of appeal from the judgment, and the co-administrators then cross-appealed from the portion of the judgment directing them to distribute one-ninth of the proceeds from the conservatorship litigation to Hixon.

## Discussion

### 1. *The no contest clause.*

■ Hixon's principal argument on appeal is that the co-administrators' distribution request in the final account violated the no contest clause in Estelle Strader's will. We conclude it did not. We describe first the principles under which the issue is to be analyzed, and then turn to the application of those principles to these circumstances.

■ An in terrorem or no contest clause in a will conditions a beneficiary's right to take the share provided under the will upon the beneficiary's agreement to acquiesce in the terms of the instrument. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92].) Such clauses are valid in California and are "favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator." (*Ibid.*) However, because a no contest clause results in a forfeiture, a court is "required to strictly construe it and may not extend it beyond what was plainly the testator's intent." (*Ibid.*)[5] Summarizing these principles, *Burch* stated: " 'Whether there has been a "contest" within the meaning of a

---

[4] The judgment filed July 23, 2001 states with respect to the demurrer: "As a matter of law, the actions by the Co-Administrators do not violate the no-contest clause in the Will. In addition, with respect to the fees, costs and expenses reimbursed in the separate Conservatorship litigation, Objector had notice of those proceedings and the opportunity to appear but chose not to do so, and this Court ordered that all such legal fees, costs and other expenses be reimbursed to each party that incurred them as a part of the settlement of that Conservatorship litigation. Objector was also served with a Notice of Entry of that Order, but did not object to that Order or appeal from it. Pursuant to that Order, only the net proceeds from that litigation, after all litigation fees, costs and other fees were reimbursed, would then pass into this probate Estate. As a matter of law, Objector cannot challenge those reimbursements in this action."

[5] The principles governing enforcement of no contest clauses were codified by the Legislature in 1989 and repealed and reenacted in 1990. (Prob. Code, § 21300 et seq.,

particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch, supra,* 7 Cal.4th at pp. 254-255.) Accordingly, to ascertain whether Grant and Ward's final account request violated the no contest clause in Strader's will, we examine both the particular circumstances and the language of the clause to determine whether the distribution request in the final account was an action that would thwart Strader's unequivocally expressed intent. (See also *Estate of Pittman* (1998) 63 Cal.App.4th 290, 299 [73 Cal.Rptr.2d 622] [thwarting of the testator's intent is the appropriate test in determining if a no contest clause has been triggered].)

The circumstances are unusual. No case presents an analytically comparable situation: that is, the assertion of a no contest clause violation in a final accounting after distribution of more than 80 percent of the estate.[6] Moreover, the dispute arises over funds that were not in the estate at the time of Strader's death, and would not have been available for distribution had the four nieces, like Hixon, decided not to risk depletion of their inheritance by pursuing the claims against Farmers. The scope of the no contest clause is broad. It states that if any beneficiary "shall contest this Will or attack or seek to impair or invalidate any of its provisions . . . then . . . I specifically disinherit such person or persons . . . ."[7]

___

as amended.) The Probate Code now also allows a beneficiary to apply to the court for a determination whether a particular motion, petition or other act would be a contest within the meaning of a no contest clause. (*Id.,* § 21320, subd. (a).)

[6]While Hixon does not mention this point on appeal, in the trial court he sought a return to the estate of the preliminary distributions made to beneficiaries who violated the no contest clause. However, no statutory authority exists under which the court might require a return to the estate of property distributed under a court order that is final and has not been appealed. (*Estate of Simmons* (1966) 64 Cal.2d 217, 222 [49 Cal.Rptr. 369, 411 P.2d 97] ["[i]n preliminary distribution proceedings the decree is conclusive as to the property distributed"].) Accordingly, a court order for a preliminary distribution, once final and in the absence of fraud, is conclusive. (See Prob. Code, §§ 7250, subds. (a) & (c), 11605, 11753, subd. (a).)

[7]The clause provides in full: "If any devisee, legatee or beneficiary under this Will, or any legal heir of mine or persons claiming under any of them, shall contest this Will or attack or seek to impair or invalidate any of its provisions, or conspire with or voluntarily assist anyone attempting to do any of those things, then in that event I specifically disinherit such person or persons, and all legacies, bequests, devises and interests given under this Will to such person or persons shall be forfeited and shall augment proportionately the shares of my estate going

Hixon contends Grant and Ward, by requesting distribution of the proceeds of the conservatorship litigation to those who funded it, sought to impair the provision of the will devising one-ninth of the residue of Strader's estate to him, and therefore must forfeit their shares. We disagree.

We begin with the obvious. ■ Many claims which would result in a variation in amounts distributed under the residuary clause of a will are not contests. For example:

— Normally, a beneficiary's attempt to characterize property—for example, as joint tenancy property or community property—is not an attack on the will or provisions within the will. (*Estate of Pittman, supra,* 63 Cal.App.4th 290, 303-304.) A recharacterization effort violates the no contest clause only when the will or other instrument already sets forth the manner in which the property is to be characterized.[8] (*Estate of Pittman,* at pp. 303-304.)

— Similarly, a petition seeking to interpret a will does not ordinarily violate a no contest clause. Rather than thwarting the testator's dispositive intent, the proceeding serves to ascertain and enforce that intent. (*Estate of Kruse* (1970) 7 Cal.App.3d 471, 476 [86 Cal.Rptr. 491].)

— An assertion of rights independent of a will, such as a claim of an implied domestic partnership interest in the testator's property, also may not violate a no contest clause. For example, in *Estate of Black* (1984) 160 Cal.App.3d 582, 589-593 [206 Cal.Rptr. 663], the court held the filing of a proposed claim would not violate the no contest clause, as testator did not express a clear intent his domestic partner should forfeit her inheritance if she pursued her implied contract rights.

■ While this case does not fit precisely into any of the above categories, the circumstances are akin to an attempt to characterize property not expressly mentioned in the will. Because Strader's will did not contemplate the existence of the litigation proceeds, no unequivocally expressed intent

---

under this Will to such of my devisees, legatees or beneficiaries as shall not have participated in such acts or proceedings."

[8]In *Estate of Pittman, supra,* 63 Cal.App.4th 290, the court found a petition seeking modification of trust schedules to recharacterize the ownership of the property listed violated the no contest clause. The petitioners sought "to thwart the trustors' clear intent by recharacterizing property expressly placed in the trust and specifically characterized." (*Id.* at p. 303; see also *Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1077-1078 [54 Cal.Rptr.2d 385] [a petition seeking to have the nature of certain bank accounts determined to be joint tenancy as opposed to probate property did not violate the no contest clause; will purported to give away only testator's separate property and his share of community property].)

exists with respect to those proceeds. While Strader clearly intended to divide the residue of her estate among the five beneficiaries, that general intent does not address the question of the property that belongs or remains in the residue of the estate. The case of *Estate of Kruse, supra*, 7 Cal.App.3d 471, is illustrative.

In *Estate of Kruse*, the testator bequeathed the income from a testamentary trust to his wife for her life, with power to invade the corpus, and devised the residue remaining upon her death to Shriners' Hospital. Shriners sought an accounting, and objected to the accounting it eventually obtained. Shriners complained the wife/executrix materially reduced the residue to be distributed to Shriners by paying herself a monthly family allowance in addition to the income from the trust. The wife contended Shriners' action constituted an attempt to change the will and violated the no contest clause, which effectively disinherited any beneficiary who directly or indirectly sought to impair any provision of the will or have any provision or devise limited or diminished. (*Estate of Kruse, supra*, 7 Cal.App.3d at p. 475.) The court concluded Shriners had a right to demand an accounting, and that its objections to the wife's accounting were not an attempt to thwart the will of the testator.[9] Since the will contained no reference to payment of the family allowance to which Shriners objected, "it cannot be said that Shriners, in asking for an interpretation and clarification of the family allowance in relation to the will, with the possibility of surcharging the [wife] if payments were improper, attempted to change the will." (*Estate of Kruse*, at pp. 476-477.)[10]

The final account request to distribute the conservatorship litigation proceeds to those who funded the litigation is comparable to Shriners' attempt in *Estate of Kruse* to have the family allowance the wife paid to herself

---

[9]The Probate Code now expressly provides that, for instruments of decedents dying after January 1, 2001, "[a] pleading regarding an accounting or report of a fiduciary" does not violate a no contest clause. This is so "as a matter of public policy," and "notwithstanding anything to the contrary in any instrument . . . ." (Prob. Code, § 21305, subds. (b)(8) & (d).)

[10]See also *Estate of Black, supra*, 160 Cal.App.3d 582. The testator left a mobilehome, and some funds in trust to provide for expenses for the home, to Donna Graham, his longtime, unmarried partner. He left the residue (which was the vast majority of his estate) to his children, and the will provided that if any beneficiary "in any manner, directly or indirectly, contests or attacks this will or any of its provisions," her interest was revoked. (*Id.* at p. 586.) The court concluded Graham could file a petition claiming a one-half interest in the testator's property, on a theory of implied domestic partnership, without violating the no contest clause. (*Ibid.*) This would not thwart the testator's wishes, because his will stated his intention to dispose of all property "which I have the *right* to dispose of by will," thus excluding property he did not have the right to dispose of by will. (*Id.* at p. 591.) The court concluded: "[T]he decedent did not express a clear intent to forfeit to the residuary legatees the limited provision made for his surviving partner of nearly 18 years by reason of her attempt to establish independently of the will an interest in property held by decedent at his death." (*Id.* at p. 592.)

surcharged against her. In *Kruse,* if Shriners had been successful and the wife's payment of an allowance to herself had been found improper, the amount available for distribution as the residue of the estate would have been increased. Indeed, the court pointed out that some items not involved in the appeal were found to have been improperly claimed as credits by the wife/executrix and were surcharged against her. (*Estate of Kruse, supra,* 7 Cal.App.3d at p. 476.) In this case, the distribution of the conservatorship proceeds to those who funded the litigation would similarly affect the amount of the residue available for distribution. The same is true in any case in which a beneficiary seeks to characterize property by asserting an interest in property otherwise passing under the will, that is, the amount remaining for distribution will be affected. Nonetheless, the effort to assert interests in a testator's assets violates a no contest clause only if the testator's intention with respect to those assets is clear.

In sum, we conclude a change in the amount available for distribution to residuary beneficiaries as a result of an accounting does not constitute an attack on the provision of the will apportioning the residue among beneficiaries, in the absence of an unequivocal indication of the testator's intent with respect to the property in dispute.[11] No such unequivocal intent is found here, where the property in question—the conservatorship litigation proceeds—did not even exist when Strader made her will, or when she died. Accordingly, the final accounting request for distribution of the conservatorship proceeds to those who funded the litigation, while misguided, was not an attempt " 'to frustrate [the testator's] unequivocally expressed intent' " (*Burch v. George, supra,* 7 Cal.4th at p. 255), and therefore did not violate the no contest clause.

### 2. *Hixon's other contentions.*

■ Hixon argues that the trial court abused its discretion in sustaining the co-administrators' demurrer to Hixon's objections without leave to

---

[11]Hixon contends a testator is not required to anticipate what might occur after her death (the conservatorship litigation and related events) in order to give effect to a broad no contest clause. The cases, however, are clear that a no contest clause is not to be enforced unless the testator's intent to do so is unequivocal. (E.g., *Burch v. George, supra,* 7 Cal.4th 246, 256 [the Supreme Court stated it was required to ascertain from the provisions of the trust instruments "whether Frank unequivocally intended that Marlene would forfeit the distribution provided for her under the trust instrument in the event that she decides to pursue her interests as a surviving spouse against the trust estate. If this intention plainly appears, then it must be concluded that Marlene's proposed actions would trigger the no contest clause"].) In *Burch,* Frank transferred the disputed assets to the trust, and included a no contest clause, thus expressing the unequivocal intent that Marlene forfeit the distribution under the trust if she claimed independent rights to those assets. (*Id.* at pp. 256-258.)

amend. The demurrer addressed only (a) Hixon's claim the no contest clause was violated, and (b) his claim, based on information in the court order approving the settlement agreement in the conservatorship litigation, that $179,994.68 in proceeds from that litigation were missing from the estate.[12] Since we have determined the no contest clause was not violated, that leaves only Hixon's contention that funds from the conservatorship litigation were missing from the estate.

We find no merit in Hixon's argument. In sustaining the demurrer, the court explicitly ruled Hixon was not entitled to question the amount of the expenses reimbursed in the separate conservatorship litigation, because he had notice of and did not object to or appeal from the court's order that only the net proceeds, after reimbursement of expenses, would pass into the probate estate. Hixon makes no legal argument about these funds, [13] or about the trial court's rationale for sustaining the demurrer. He merely states the trial court erred in sustaining the demurrer without leave to amend his objections. He concedes it is his burden to demonstrate how his objections could be amended to state a claim, but merely refers to the proposed first amended objections he filed in the trial court with his motion for reconsideration. Since Hixon offers no explanation or argument suggesting how the trial court erred, or why his amended objections state a claim, we may consider the point waived. In any event, we discern nothing new in the proposed amended objections.

### 3. *The cross-appeal.*

Grant and Ward argue that the trial court erred in summarily ruling that Hixon was entitled to receive a one-ninth share of the proceeds of the Farmers litigation. They claim they were entitled to an evidentiary hearing on the issue, since Hixon "did not demur to this issue" or make any other dispositive motion. Grant and Ward do not suggest what evidence they might offer, and cite no legal authority to support the proposition that proceeds that are a part of the probate estate may be distributed other than as

---

[12]The appellate briefs indicate the amount of litigation proceeds Hixon now disputes is approximately $109,000.

[13]The trial court's judgment also explicitly found that all allegations in the petition for approval of the final account, as supplemented, were true. The final account was supplemented on March 1, 2001, with an updated accounting, including a schedule describing the deductions made from the gross settlement with Farmers to arrive at the net sum distributed to the estate. The judgment likewise stated that Hixon's objections were "overruled in their entirety" except as to Hixon receiving a one-ninth share of the net recovery from Farmers, thus rejecting Hixon's objection that monies from the Farmers' recovery were missing from the estate and should be surcharged against Grant and Ward.

directed in the will. In the absence of any citation of authority, we affirm the court's ruling.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs.

Cooper, P. J., and Rubin, J., concurred.

The petition of appellant James Hixon for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.