Filed 5/28/24

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| SARAH PLOTT KEY, | B322246 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BP131447) |
| v. | |
| ELIZABETH PLOTT TYLER et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County. Daniel Juarez, Judge. Reversed and remanded with directions.

Oldman, Sallus & Gold, Mary-Felicia Apanius, Marshal A. Oldman; Wershow & Cole and Jonathan A. Wershow for Plaintiff and Appellant.

Magee & Adler, Eric R. Adler; Murphy Rosen, Paul D. Murphy and Daniel N. Csillag for Defendant and Respondent Elizabeth Plott Tyler.

Greenberg Glusker Fields Claman & Machtinger and Marc M. Stern for Respondents William O. Gamble III and James W. Sullivan.

Sarah Plott Key (Key) appeals from an order denying a petition she filed in probate court to disinherit her sister, Elizabeth Plott Tyler (Tyler). The petition sought to enforce a "no contest" clause in a 1999 trust established by the sisters' parents, Thomas E. Plott (Thomas) and Elizabeth R. Plott (Elizabeth).[1]

This case has a lengthy appellate history. There have been three prior appeals of orders concerning the same 1999 trust.[2] Indeed, this is the second time we have considered the same petition that is at issue in this appeal. In *Key v. Tyler II* we reversed the probate court's order striking Key's petition under the anti-SLAPP statute (Code Civ. Proc., § 425.16). We held that: (1) the anti-SLAPP statute applies to a petition to enforce a no contest clause; and (2) Key adequately demonstrated a likelihood of success on her petition. With respect to this second point, we concluded that Tyler's judicial defense of the 2007 Amendment that she had procured through undue influence constituted a

---

[1] Several different trust provisions are at issue in this appeal. We use the general term "Trust" to refer to the entire trust that Thomas and Elizabeth created, including an amendment that they executed in 2003. We refer to that amendment as the "2003 Amendment," and we refer to the Trust as it existed prior to that amendment as the "Original Trust." We use the term "2007 Amendment" to refer to the purported amendment that Elizabeth executed in 2007 and that prior proceedings in this case have established Tyler procured through undue influence.

[2] Those three prior appeals are *Key v. Tyler* (June 27, 2016, B258055, mod. June 29, 2016) [nonpub. opn.] (*Key v. Tyler I*); *Key v. Tyler* (2019) 34 Cal.App.5th 505 (*Key v. Tyler II*); and *Key v. Tyler* (Aug. 30, 2021, B298739, mod. Aug. 31, 2021) [nonpub. opn.].

direct contest of the Trust. We also concluded that Key had provided sufficient evidence that Tyler lacked probable cause to defend that amendment in court. (*Key v. Tyler II*, *supra*, 34 Cal.App.5th at p. 510.)

On remand from that appeal, Tyler raised a new issue: whether the lack of a no contest clause in the 2003 Amendment that the parents executed to change the distribution of the Trust's residue means that Tyler's share of the assets distributed under the terms of that amendment are exempt from forfeiture. The trial court concluded that they were. We disagree and therefore reverse.

Our holding rests upon the plain language of the Original Trust's no contest provision (the No Contest Clause) in light of a key issue of law that is now beyond dispute. Tyler cannot, and does not, ask us to revisit our holding in *Key v. Tyler II* that her defense of the 2007 Amendment in court was a direct contest of the Trust. Under Probate Code section 21311, such a direct contest, if "brought without probable cause," provides a legally sufficient basis to enforce a no contest clause. (Prob. Code, § 21311, subd. (a)(1).)[3] Indeed, Tyler does not dispute that her share of personal property that is expressly specified in the Original Trust is subject to forfeiture. She claims only that her share of the assets that the 2003 Amendment specifies is exempt from the consequences of her direct contest.

The claim is untenable in light of the language of the No Contest Clause. That clause requires that, if a beneficiary contests the Trust, the Trustors shall "disinherit" that

---

[3] Subsequent undesignated statutory references are to the Probate Code.

beneficiary, and that all interests given to that person "under this Trust" are to be forfeited. Thus, the plain language of the No Contest Clause requires that, if Tyler lacked probable cause to contest the Trust, she must be disinherited. No statute limits the scope of the forfeiture that the No Contest Clause may impose. Tyler's share of the Trust's residual monetary assets is therefore not exempt from forfeiture simply because her specific share was specified by a subsequent amendment that does not contain a no contest clause.

## BACKGROUND

Our prior opinions discuss the background facts in detail. We therefore only briefly summarize the key facts and the particular Trust documents relevant to this appeal.

### 1. The Original Trust

Thomas and Elizabeth (together, the Trustors) created the Original Trust in 1999. They were designated as both Trustors and Trustees, and had the power to revoke the Trust as to their share of the marital property during their joint lifetimes. The Trustors had three children: Tyler; Key; and a third sister not involved in this litigation, Jennifer Plott Potz (Potz).

Upon the death of the first trustor, the Trust estate was to be divided into three subtrusts: (1) the Survivor's Trust; (2) the Marital Trust; and (3) the Exemption Trust. The Survivor's Trust consisted of the surviving trustor's separate property and the surviving trustor's community property share of the trust estate, along with household items. The Marital Trust was to include the maximum permissible amount of the deceased trustor's estate that could pass without tax liability under the federal marital tax deduction. The Exemption Trust included the remainder of the Trust estate.

4

The Original Trust also created a Residual Trust, which was created to receive assets flowing from the other three subtrusts for distribution to the beneficiaries upon the death of the surviving trustor.

After the first trustor's death, the Survivor's Trust remained revocable, but the Marital Trust and the Exemption Trust became irrevocable. The surviving trustor also retained the power by will or codicil to direct the distribution of the Survivor's Trust upon the surviving trustor's death. Absent such direction, the Original Trust provided that, upon the death of the surviving trustor, the personal effects in the Survivor's Trust (with the exception of a grand piano which was to be given to Key) would be distributed in equal portions to the three children. The remainder of the assets in the Survivor's Trust would flow into the Residual Trust.

The surviving trustor had the right to receive the net income from the Marital Trust and the Exemption Trust during the surviving trustor's life. The surviving trustor also had the right to change the *manner* in which the Trustors' issue would receive their shares from those sub trusts. However, the surviving trustor could not change the amount of those shares. Unless the surviving trustor made such a change, upon the surviving trustor's death the assets remaining in the Marital Trust and the Exemption Trust were to flow into the Residual Trust.

In Article Seven of the Original Trust, the trustors specified the shares of the Residual Trust that the beneficiaries were to receive from the assets flowing into that trust after the death of the surviving trustor. Those assets were to be divided

and distributed in shares consisting of 50 percent to Tyler, 35 percent to Potz, and 15 percent to Key.

Article Fourteen of the Original Trust contains the No Contest Clause. The clause provides in part that "if any devisee, legatee or beneficiary under this Trust, or any legal heir of the Trustors or person claiming under any of them directly or indirectly (a) contests either Trustor's Will, this Trust, any other trust created by a Trustor, or in any manner attacks or seeks to impair or invalidate any of their provisions, . . . then in that event Trustors specifically disinherit each such person, and all such legacies, bequests, devises, and interest given under this Trust to that person shall be forfeited as though he or she had predeceased the Trustors without issue, and shall augment proportionately the shares of the Trust Estate passing under this Trust to, or in trust for, such of Trustors' devisees, legatees and beneficiaries who have not participated in such acts or proceedings."

## 2. The 2003 Amendment

The 2003 Amendment, executed separately by Thomas and Elizabeth in that year, is a one-page document that amended Article Seven of the Original Trust governing the Residual Trust. The 2003 Amendment changed the shares to be distributed to the three children from the Residual Trust so that Tyler, Key, and Potz would each receive a one-third share. The 2003 Amendment does not contain a no contest provision.

## 3. The 2007 Amendment

Thomas died in 2003. Following his death, Tyler used her influence over Elizabeth to obtain the 2007 Amendment. (*Key v. Tyler II, supra,* 34 Cal.App.5th at pp. 511–512.)

6

The 2007 Amendment revised Article Four of the Original Trust governing the Survivor's Trust. It changed the requirements for the distribution of property from the Survivor's Trust following Elizabeth's death. (See *Key v. Tyler II*, *supra*, 34 Cal.App.5th at p. 512.)

Under the revised distribution scheme, Key was to receive only "[a]n amount equal to the lesser of $1,000,000, or 5% of the then Survivor's Trust Estate less any amount owed on any outstanding promissory note in favor of the Surviving Trustor." Tyler was to receive 65 percent of Elizabeth's interest in the family's nursing home business entities and 50 percent of Elizabeth's remaining assets. Potz was to receive 35 percent of Elizabeth's interest in the business entities and the other 50 percent share of Elizabeth's remaining assets. These shares were to be distributed to Tyler and Potz through the Residual Trust.

The 2007 Amendment also gave Tyler the Beverly Hills home that Elizabeth owned, along with its contents.

4.    **Prior Proceedings**

Key filed a petition to invalidate the 2007 Amendment on the ground of undue influence. Following a trial in 2013, the probate court granted that petition. This court affirmed the probate court's order in *Key v. Tyler I.*

Following remand from that decision, Key filed a petition to enforce the No Contest Clause (the No Contest Petition). Tyler responded with a motion to strike that petition under the anti-SLAPP statute (Code Civ. Proc., § 425.16).

The probate court granted Tyler's anti-SLAPP motion on several grounds. As is relevant to this appeal, the court concluded that Tyler had not directly contested the Trust because

7

she did not initiate any legal proceedings challenging the Trust, but instead simply defended the 2007 Amendment against the challenge that Key brought. Furthermore, the court concluded that Key had failed to show that Tyler lacked probable cause to defend the 2007 Amendment.

We reversed this order in *Key v. Tyler II.* On the issue of whether Tyler's defense of the 2007 Amendment constituted a direct contest, we held that Tyler's pleadings defending the 2007 Amendment alleged the " 'invalidity of a protected instrument,' " and "therefore met the statutory definition of a direct contest" under section 21310. (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 524.) We also held that Key had made a sufficient showing that Tyler lacked probable cause for her defense of the 2007 Amendment to warrant denial of Tyler's anti-SLAPP motion. However, we emphasized that Key's showing did not establish the absence of probable cause as a matter of law. (*Id.* at p. 539.) We noted that the "legal standard for invalidating an instrument based upon undue influence and the standard for finding a lack of probable cause to *believe* the instrument was valid are different." (*Ibid.*) We remanded for further proceedings on Key's No Contest Petition. (*Id.* at p. 541.)

Following remand, Tyler moved to bifurcate the trial on Key's No Contest Petition. Tyler argued that there was a preliminary, and potentially dispositive, issue arising from the absence of a no contest provision in the 2003 Amendment. Tyler claimed that the absence of such a provision means that the 2003 Amendment is not a protected instrument under section 21310, subdivision (e), and that Tyler's share of the assets from the Residual Trust specified by the 2003 Amendment is therefore not subject to forfeiture.

8

The probate court agreed and, on its own motion, denied Key's No Contest Petition with prejudice. The court concluded that the 2003 Amendment is not a protected instrument because (1) it does not itself contain a no contest provision, and (2) no other document containing a no contest clause references the amendment. The court rejected Key's argument that the law of the case doctrine foreclosed Tyler's argument, concluding that this court's prior holding in *Key v. Tyler II* did not bind the court "to find that the no contest clause in the original trust extends to and subsumes the Amendment."

The probate court's order did not expressly address whether Tyler's interest in the assets distributed through the Residual Trust is subject to forfeiture based upon her direct contest of the Original Trust.

## DISCUSSION

### 1. Standard of Review

The interpretation of a trust instrument is an issue of law unless there is a conflict in extrinsic evidence. (*Burch v. George* (1994) 7 Cal.4th 246, 254 (*Burch*).) In light of that principle, all parties agree that this court should review the probate court's order de novo.

### 2. The Original Trust's No Contest Clause Applies to Assets that Tyler Would Inherit from the Residual Trust

There is no dispute that Tyler's defense of the 2007 Amendment in court constituted a direct contest of the Original Trust. Our opinion in *Key v. Tyler II* so held. Tyler also concedes the point, agreeing that the "Original Trust is a protected instrument from which she could be disinherited if she did not contest it with probable cause."

9

Thus, the dispositive issue in this appeal is the *consequence* of Tyler's direct contest. Tyler claims that the forfeiture resulting from her direct contest could include only her share of the assets that is directly controlled by the body of the Original Trust. Tyler argues that those assets are limited to her share of the personal property identified in Article Four of the Original Trust, which the 2007 Amendment changed. Tyler claims that she cannot be precluded from receiving her designated portion of the financial assets distributed through the Residual Trust because those assets are "controlled by" the 2003 Amendment, which is not a protected instrument.

Before discussing the merit of this argument, we consider the effect of our prior opinion.

### a. *Key v. Tyler II established only the existence of Tyler's direct contest, not its consequence*

Key claims that the only issue left open after our opinion in *Key v. Tyler II* was whether Tyler had probable cause for her judicial defense of the 2007 Amendment. Thus, she claims, Tyler is precluded by the law of the case doctrine from arguing now that her share of assets controlled by the 2003 Amendment is exempt from forfeiture. We disagree.

Under the law of the case doctrine, " '[t]he decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127, quoting *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.) However, for the doctrine to apply, the prior decision must have actually decided the point of law at issue,

10

either expressly or implicitly. (*Leider*, at p. 1127.) " 'Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in the prior appeal.' " (*Ibid.,* quoting *Estate of Horman* (1971) 5 Cal.3d 62, 73.)

The scope of the potential forfeiture resulting from Tyler's direct contest of the Original Trust under the language of the No Contest Clause is an issue of law involving the interpretation of a written instrument to which the law of the case doctrine could apply. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1498 [Supreme Court's prior construction of a city's letter approving a project "is obviously a question of law to which the doctrine of law of the case applies"].) But our decision in *Key v. Tyler II* did not decide that issue.

In *Key v. Tyler II,* we decided only that Key had provided sufficient evidence of a probability of success on her No Contest Petition to defeat Tyler's anti-SLAPP motion. As mentioned, in reaching that conclusion we also decided the legal issue that Tyler's defense of the 2007 Amendment in court was a direct contest of the Original Trust. We did so because Tyler raised as a defense to the merits of Key's No Contest Petition that Tyler did not initiate any judicial action challenging the trust. (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 523.)

However, Tyler did not present any defense to the merits of Key's petition based upon the absence of a no contest clause in the 2003 Amendment. We therefore did not decide whether the absence of such a clause in the 2003 Amendment affected the scope of a possible forfeiture of Tyler's interests under the No Contest Clause.

11

Moreover, in our prior opinion we expressly disclaimed any intent to decide the scope of a possible forfeiture. In her respondent's brief in *Key v. Tyler II*, Tyler made the fallback argument that, if Key's No Contest Petition were to proceed, Tyler's disinheritance could not extend to subtrusts other than the Survivor's Trust, because that was the only subtrust affected by the 2007 Amendment.[4] We declined to consider that argument because the issue related "to the scope of permissible relief under Key's No Contest Petition rather than the probate court's decision granting Tyler's anti-SLAPP motion that is the subject of this appeal." (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 541, fn. 19.)

Nor did our prior opinion decide whether the 2003 Amendment is a protected instrument. Neither Tyler nor Key raised that issue. Moreover, it was not necessary to decide that question to determine if Key had presented sufficient evidence to survive Tyler's anti-SLAPP motion.

Indeed, as discussed below, it is not necessary to decide that issue even now. While our prior opinion did not foreclose Tyler's current argument about the scope of a possible forfeiture, the absence of a no contest clause in the 2003 Amendment is not relevant to our decision on the merits of that argument. As we explain, Tyler's direct contest of the provisions of the Original Trust was sufficient to support a forfeiture even if the 2003 Amendment is a separate, unprotected instrument.

---

[4] We previously took judicial notice of the records from the prior appeals.

**b.** ***Under the language of the No Contest Clause, Tyler's direct contest of the Original Trust requires forfeiture of her inheritance if made without probable cause***

Unless limited by statute, the scope of the forfeiture required under a trust's no contest clause depends upon the intent of the trustors as expressed in the language of the instrument. (See *Donkin v. Donkin* (2013) 58 Cal.4th 412, 425–426 [the current legislative scheme governing no contest clauses incorporates the recommendation of the California Law Revision Commission that " 'a no contest clause should be enforceable unless it conflicts with public policy' "], quoting Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 391; *Meiri v. Shamtoubi* (2022) 81 Cal.App.5th 606, 613 [whether there has been a contest within the meaning of a no contest clause " ' "depends upon the circumstances of the particular case and the language used" ' "], quoting *Burch, supra,* 7 Cal.4th at pp. 254–255.) The language of a no contest clause must be strictly construed. (§ 21312; *Burch,* at p. 254.) However, "even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' " (*Burch,* at p. 255, quoting *Estate of Kazian* (1976) 59 Cal.App.3d 797, 802.)

Tyler contends that the assets she would inherit from the Residual Trust are exempt from forfeiture because a separate, unprotected instrument (the 2003 Amendment) specifies her

13

share of those assets. We therefore examine the language of the No Contest Clause to determine if that contention is consistent with the Trustors' intent.

The forfeiture language in the No Contest Clause is comprehensive. As mentioned, it requires that, in the event any beneficiary contests "this Trust, any other Trust created by a Trustor, or in any manner attacks or seeks to impair any of their provisions," the "Trustors specifically disinherit each such person," and all interests given "under this Trust" to that person shall be forfeited.

The term "disinherit" is broad. Its plain meaning is that the Trustors intended to deny any inheritance to a beneficiary who contests the Trust. That general term is followed by the further specific consequence that a beneficiary who contests the Trust forfeits any interest that is "given under this Trust."

Tyler's interest in the assets flowing through the Residual Trust falls within the scope of this broad forfeiture language. The instruction that the Trustors intended to "disinherit" any beneficiary who contests the Trust is not limited to any specific inheritance. Tyler's interest in assets distributed through the Residual Trust is certainly among those that she would inherit.

But we need not decide whether this general term would be sufficient to "disinherit" Tyler from some interest in assets distributed through a completely different trust or through some other instrument that is separate from the Original Trust. That is not the case here. Tyler's interest in assets distributed through the Residual Trust also comes within the more specific scope of assets that are subject to forfeiture if they are "given under" the Original Trust.

The 2003 Amendment changed the percentage of assets that each beneficiary would inherit from the Residual Trust, but that is all that it did. It did not displace the structure of the subsidiary trusts, nor did it change how assets would flow into the Residual Trust. The provisions of the Original Trust that created and governed the Survivor's Trust, the Marital Trust, and the Exemption Trust remained unaffected by the 2003 Amendment. Under the terms of the Original Trust, each of those subtrusts would contribute assets to the Residual Trust. Each of the beneficiaries was to receive her specific individual share of the assets flowing into the Residual Trust under the terms specified in the 2003 Amendment. But those assets were also "given under" the overall structure of the Original Trust.

Critically, there is also nothing in the language of the No Contest Clause suggesting that the Trustors intended to limit the forfeiture that would result from particular kinds of contests. To the contrary: The language of the No Contest Clause shows that the Trustors intended for it to reach as broadly as possible in imposing consequences for the decision to contest the Trust in any manner. The Trustors specified that all manner of conduct challenging the Trust would trigger the No Contest Clause, including a contest of "either Trustors' Will, this Trust, any other trust created by a Trustor," or conduct that "in any manner attacks or seeks to impair or invalidate any of their provisions." Under the No Contest Clause, the consequences of each of these challenges is the same: The challenger is to be disinherited and must forfeit all interests she otherwise would receive "under this Trust." This broad language contradicts any argument that the Trustors intended to limit the scope of a forfeiture only to the

15

specific assets controlled by the particular trust provision that a beneficiary chooses to challenge.

Tyler points out that the forfeiture language in the No Contest Clause does not specifically refer to a contest of a trust *amendment*. However, the absence of such a specific reference does not support the conclusion that the Trustors intended to limit the forfeiture that would apply to Tyler's challenge here. It would make no sense for the Trustors to state that a beneficiary's contest of "any *other* trust created by a Trustor" (italics added) would result in forfeiture, but not a contest of an amendment to the *same* trust. In any event, what the Trustors might have intended as a consequence for a contest directed *solely* against a subsequent amendment is ultimately not the issue here. Tyler's contest was not limited to the 2003 Amendment. As discussed above, there is no dispute here that Tyler also directly contested the Original Trust itself. The relevant question is therefore whether the Trustors intended to *limit* the forfeiture that would result from such a contest only to the share of assets directly specified in the Original Trust instrument. Nothing in the language of the No Contest Clause supports that conclusion.

Moreover, Tyler's contest of the Original Trust directly affected the assets that she now argues should be exempt from forfeiture. As we explained in *Key v. Tyler II,* Tyler's defense of the 2007 Amendment, had it been successful, would have had the effect of revoking paragraph C of Article Four (governing the Survivor's Trust), "which the 2007 Amendment purported to replace." (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 524.) The 2007 Amendment would have replaced that portion of the Survivor's Trust with detailed instructions for the distribution of

16

the balance of the Survivor's Trust, limiting Key's share to $1 million at most.

In contrast, the 2007 Amendment specified that Tyler would receive 65 percent of the Surviving Trustor's interest in the Trustors' business entities and 50 percent of the remaining assets, and Potz would receive 35 percent of the business entities and the other 50 percent of the remaining assets.[5]  Because the Trustors' business assets that produce revenue had all been allocated to the Survivor's Trust, this provision had the effect of depriving Key of any share of the business assets (as well as any share of the remaining assets allocated to the Survivor's Trust). (See *Key v. Tyler II, supra,* 34 Cal.App.5th at p. 512.)  In short, the 2007 Amendment cut off the flow of business assets that Key would otherwise have inherited through the Residual Trust before they ever reached the Residual Trust, making the one-third share of the Residual Trust that the 2003 Amendment allocated to Key irrelevant with respect to those assets.

This was hardly a minor change.  Nor was it limited to personal property.  Rather, it affected the entirety of assets distributed through the Survivor's Trust, amounting to an attack on both the Original Trust and the beneficiaries' shares specified in the 2003 Amendment.  Indeed, Tyler concedes that the 2007 Amendment "would have altered the distribution schemes for

---

[5] As mentioned, the 2007 Amendment instructed that the shares of the Survivor's Trust allocated to Tyler and Potz were to be distributed to each through the Residual Trust.  In contrast, the effect of the 2007 Amendment was to preclude Key from inheriting *any* portion of the Survivor's Trust through her interest in the Residual Trust.

*both* the Original Trust *and* the 2003 Amendment, which would have reduced Key's share in the survival trust to $1 million."

This significant change amounted to the type of contest that the Trustors clearly intended to trigger the full scope of the forfeitures identified in the No Contest Clause. (Cf. *Burch, supra,* 7 Cal.4th at pp. 260–261 [proposed litigation would have frustrated the trustor's intent and amounted to a contest because it would have nullified or thwarted the "provisions in the trust instrument that provide for the allocation of all assets placed in the trust estate to the various subsidiary trusts"]; *Estate of Pittman* (1998) 63 Cal.App.4th 290, 301 [the evident purpose of a broad no contest clause was "to expansively prohibit any attempt to set aside any provision of the trust"].)

### c.      *The scope of the forfeiture that the Trustors intended is not limited by law*

Having concluded that the language of the No Contest Clause supports forfeiture of all Tyler's assets distributed through the Trust, including the Residual Trust, the only remaining issue is whether the law somehow limits the effect that we must otherwise give to the Trustors' intent as expressed in that language. It does not.

The Probate Code carefully circumscribes the types of contests that can support the enforcement of a no contest clause. Under section 21311, a no contest clause may be enforced only against three types of contests, including, as relevant here, a "direct contest that is brought without probable cause." (§ 21311, subd. (a)(1).) As our Supreme Court has explained, this careful definition is a result of the Legislature's attempt to simplify and eliminate uncertainty in the application of the law on no contest clauses. (*Donkin v. Donkin, supra,* 58 Cal.4th at pp. 424–426.)

The current legislative scheme represents a balance between competing policy interests.  On the one hand, no contest clauses help in respecting a transferor's wishes and reducing conflict among beneficiaries.  On the other hand, they can restrict access to the courts to protect important rights and, if wrongly applied, can result in a forfeiture that the transferor did not intend.  (*Ibid.*)

Careful adherence to the Legislature's definition of the types of contests that can support the application of no contest clauses is therefore important to respect the Legislature's balance of policy interests, including the desire to avoid unwarranted forfeitures.  (See *Aviles v. Swearingen* (2017) 16 Cal.App.5th 485, 491–492 (*Aviles*).)  This includes a strict application of the Legislature's definition of a "protected instrument," which includes only two categories of documents:  (1) the "instrument that contains the no contest clause," and (2) an instrument "that is in existence on the date that the instrument containing the no contest clause is executed and is expressly identified in the no contest clause."  (§ 21310, subd. (e).)  This means that, if a party contests an instrument that does not belong to one of these categories, a no contest clause will not apply, even if it appears that the transferors intended that it would.  Giving effect to the transferors' intent in that situation would violate the directive in section 21314 that "[t]his part applies notwithstanding a contrary provision in the instrument."  (See *Aviles*, at p. 492.)

However, unlike the legislative restrictions on the *types* of contests that can support application of a no contest clause, if a prohibited contest does occur the governing statutes do not place any restriction on the *scope* of the forfeiture that may result.  In the event of a direct contest brought without probable cause, the

19

Legislature has already balanced the various policy interests to permit a forfeiture. The governing statutes do not place any further limit on the scope of the forfeiture that the transferors are permitted to impose.

Tyler does not cite any authority to the contrary. Tyler relies on *Aviles, supra,* 16 Cal.App.5th 485, but that case is inapposite. In *Aviles*, unlike here, there was no direct contest of a protected instrument. In that case, a beneficiary challenged only an unprotected trust amendment on the ground that it was procured through undue influence.[6] (*Id.* at p. 489.) Because that amendment did not itself contain a no contest provision, the court concluded that it was not a protected instrument and held that no direct contest had occurred. (*Id.* at pp. 491–492.) Thus, the court's holding was simply an application of the statutes discussed above that narrow the types of contests that will support application of a no contest clause. The holding did not address the pertinent issue here, which is the permissible scope of forfeiture when a direct contest *has* occurred.

Other cases that Tyler cites similarly concern the issue of whether a no contest clause in one instrument can apply to the contest of a separate, unprotected instrument. Those cases do not address the permissible scope of forfeiture from an actual direct contest of a protected instrument. (See *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1329, 1338 [proposed challenge to an unprotected trust amendment on the ground of undue influence]; *Perrin v. Lee* (2008) 164 Cal.App.4th 1239, 1247

---

[6] This case would be similar to *Aviles* if, for example, Tyler had directly contested only the 2003 Amendment. But her attack on the Trust was not so limited, as discussed above.

[proposed challenge to several unprotected trust amendments]; *Cory v. Toscano* (2009) 174 Cal.App.4th 1039, 1044–1045 [challenge to the validity of interlineations on a trust document, which the court held constituted a separate, unprotected amendment].)

Tyler also cites the language of section 21311, which provides in part that a no contest clause "shall only be enforced *against* . . . [¶] [a] direct contest that is brought without probable cause." (§ 21311, subd. (a)(1), italics added.) Tyler argues that this language means that a no contest clause may only be enforced "against" the particular instrument that was directly contested.

The language of the statute does not support that interpretation. The statute identifies the types of *contests* that a no contest clause may be enforced against, not the types of *instruments* to which a forfeiture may be applied. This is consistent with the Legislature's purpose to clearly designate the categories of contests that may support the application of a no contest clause. (See *Donkin v. Donkin, supra,* 58 Cal.4th at pp. 424–426.) The statute does not address the scope of forfeiture that is permissible once a contest that falls within one of these categories has occurred.

Thus, Tyler does not identify any legislative limitation on the scope of forfeiture that trustors may impose as a penalty for a direct contest brought without probable cause. Tyler's position ultimately depends upon such a limitation. Tyler argues, in essence, that her direct contest of the Original Trust may result only in the forfeiture of her share of assets that is directly specified by the particular provisions that she challenged. There

21

is no support for that argument in the language of the No Contest Clause or in the law, and we therefore reject it.

In light of this analysis, we reverse. Key requests that, in doing so, we also conclude that Tyler lacked probable cause for her direct contest of the Trust. However, we cannot decide the issue of probable cause as a matter of law on this appeal. As we explained in *Key v. Tyler II,* the "legal standard for invalidating an instrument based upon undue influence and the standard for finding a lack of probable cause to *believe* the instrument was valid are different." (*Key v. Tyler II, supra,* 34 Cal.App.5th at p. 539.) The probate court has not yet considered whether the facts show that Tyler lacked probable cause. We therefore remand for the probate court to make such findings.

## DISPOSITION

The probate court's order denying Key's petition to enforce the No Contest Clause is reversed. The matter is remanded for further proceedings on that petition, including findings as to whether Tyler lacked probable cause for her direct contest of the Trust. Key is entitled to her costs on appeal.

CERTIFIED FOR PUBLICATION.


                                                                LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.